STATE OF NORTH CAROLINA v. JOANN MARGULIES SMITH SUGGS

No. 9410SC187

(Filed 7 February 1995)

## 1. Search and Seizure § 20 (NCI4th)— conspiracy to commit murder—telephone records—admissible

The trial court did not err in a prosecution arising from defendant hiring someone to kill her former husband and assault a woman whom he was dating and from an attack being carried out on the former husband by admitting telephone records which showed telephone calls from defendant to a co-conspirator testifying against her. Assuming standing under the North Carolina Constitution, defendant failed in her burden of showing sufficient action attributable to the State which would implicate the constitutional protections against unreasonable search and seizure. The records were originally recorded in the usual course of Southern Bell's business and not under some State directive, there is no subpoena in the record, and defendant's argument that sufficient action attributable to the State exists because the State called a Southern Bell employee to testify about and produce the records at trial was rejected.

**Am Jur 2d, Evidence §§ 601, 646.**

STATE v. SUGGS

[117 N.C. App. 654 (1995)]

Interest in property as requisite of accused's standing to raise question of constitutionality of search and seizure. 4 L. Ed. 2d 1999.

2. **Evidence and Witnesses § 1789.1 (NCI4th)— conspiracy to commit murder—mention of polygraph by witness—no mistrial**

The trial court did not abuse its discretion by denying defendant's motion for a mistrial in an prosecution resulting from defendant's attempt to hire someone to kill her former husband and a woman he was seeing where the person who was hired, testifying for the State, offered to take a polygraph test. The offer was unintentionally elicited by defendant after intense cross-examination and during a trial revealing inconsistencies in the witness's testimony, the trial court allowed the defendant's motion to strike the statement and immediately instructed the jury to disregard the statement, and the court further asked the jury if they could in fact disregard the statement, to which they answered in the affirmative.

**Am Jur 2d, Evidence §§ 1007-1009.**

3. **Conspiracy § 32 (NCI4th)— solicitation of assault with a deadly weapon inflicting serious injury—no evidence of how injury to be inflicted—sufficient only for misdemeanor assault**

The evidence was sufficient only for the lesser included offenses of conspiracy and solicitation of misdemeanor assault in a prosecution for conspiring and soliciting an assault upon the woman defendant's former husband was seeing where there was no evidence of how the co-conspirator was to inflict the severe injury on the victim. To hold a defendant liable for the substantive crime of solicitation, the State must prove a request to perform every essential element of the crime; the crime of assault with a deadly weapon inflicting serious injury requires that the State produce evidence that a deadly weapon was used in the assault. Contrary to the State's argument, the mere fact that the defendant asked the co-conspirator to inflict serious injury on the victim does not necessarily imply the use of a deadly weapon because serious injury can be inflicted without the use of a deadly weapon. However, in finding the defendant guilty of the charges of solicitation and conspiracy to commit assault with a deadly weapon inflicting serious injury, the jury necessarily found the

facts establishing the crimes of conspiracy and solicitation of misdemeanor assault.

**Am Jur 2d, Conspiracy § 29.**

Appeal by defendant from judgments entered 29 June 1993 in Wake County Superior Court by Judge J. B. Allen, Jr. Heard in the Court of Appeals 10 January 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General K. D. Sturgis, for the State.*

*Tharrington, Smith & Hargrove, by Roger W. Smith and E. Hardy Lewis, for defendant-appellant.*

GREENE, Judge.

Joann Suggs (defendant) appeals from jury verdicts finding her guilty of conspiracy to commit the murder of J.R. Suggs (Suggs), aiding and abetting an assault on Suggs with a deadly weapon with intent to kill inflicting serious injury, in violation of N.C. Gen. Stat. § 14-32, conspiracy to commit an assault on Glenda Johnson (Johnson) with a deadly weapon inflicting serious injury, and solicitation to commit an assault on Johnson with a deadly weapon inflicting serious injury. After the jury verdicts, the trial court entered judgment on these convictions and sentenced the defendant to a total of nineteen years in prison.

Defendant was charged after William Bateman (Bateman) confessed to the shooting of Suggs, the defendant's former husband, on 4 December 1992, and then, on 9 December 1992, told detectives that the defendant hired him to kill Suggs. Bateman also later revealed that the defendant hired him to assault Johnson, a woman whom Suggs had been dating. The defendant was arrested and charged with a total of seven offenses; five related to Suggs' attack and two related to the intended attack on Johnson.

Bateman was the State's key witness at trial and his testimony reveals the two plans; one to attack Johnson and one to kill Suggs. At some point in the spring of 1992, Bateman was told by a friend that he could make some money "by beating somebody up." Following that, Bateman had a series of conversations with the defendant, during which she told him about Johnson and the two agreed that Bateman would "break [Johnson's] face" or break her legs or arms for $2,500, which the defendant later paid to Bateman.

Bateman also testified that after four months of Bateman stalling over Johnson, the defendant and Bateman agreed that Bateman would kill Suggs for $15,000, through a series of subsequent telephone conversations between the defendant and Bateman. No more was said about the arrangement to injure Johnson, and no assault on Johnson occurred. In mid-October 1992, the defendant advanced Bateman $2,000, and later gave Bateman a picture of Suggs and drove him by Suggs' house.

Bateman further testified that the defendant continued to call him and on four occasions prompted Bateman to kill Suggs, but Bateman was unable to carry out their plans on three occasions. Finally, on 3 December 1992, Bateman confronted Suggs, at Suggs' apartment, with a gun, and over the course of ten to twelve hours, Bateman kept Suggs hostage in Suggs' condominium and also drove around in Suggs' car, with Suggs in the trunk at times and in the passenger seat at other times. Bateman called the defendant and had her meet him, at which point Bateman shot at the trunk of Suggs' car, where he was keeping Suggs at the time, and left the scene with the defendant. A short time later, the police found Suggs' car, with five bullet holes in a tight circle in the trunk lid and Suggs in the trunk with blood on his hand and his hip.

During the cross-examination of Bateman, in the presence of the jury, the following exchange took place:

A.  That's not a story; that's the truth.

Q.  But you didn't tell it that way on the 9th, did you?

A.  No, sir, I did not.

Q.  And you remember it better today than you did then?

A.  That's true. And I knew it then, too, I just did not tell it, sir.

I'll be more than happy to take a lie detector test right here in front of the jurors.

The defendant objected to this offer by Bateman, moved to strike the testimony, and moved for a mistrial. The trial judge allowed the defendant's motion to strike the testimony, but denied her motion for a mistrial and gave the following curative instruction:

Ladies and gentlemen of the jury, before the Court sent you into the jury room, the witness upon being cross-examined by Mr. Smith made a statement something to the effect: I will be willing

to take a lie detector test right here before the jury. I have instructed you at the time to disregard that statement and to not consider it in any way. At this time I instruct you, ladies and gentlemen, that you are to disregard that statement and to disregard it in all respects and not consider that statement in any way.

Can all of you do so? If so, please raise your right hand.

Let the record show that all members of the jury raised their right hand indicating that they could follow the Court's order and the Court's instructions to disregard the statements made by the witness that he would be willing to take a lie detector test before the jury.

Again, ladies and gentlemen, you are not to consider that in any way. You are to disregard that.

The State, over the defendant's objection, introduced copies of telephone records obtained from Southern Bell Telephone Company, for the period of late August 1992 to early December 1992, listing every call made from and received by the defendant's telephone along with the date and time the calls were made. The defendant's objection asserted that the records were obtained in violation of her rights under the United States and North Carolina constitutions against unreasonable search and seizure. The defendant argues that she had standing to assert this right because the legislature has provided a required procedure governing the State's acquisition of all telephone records, N.C.G.S. § 15A-260 to -264 (1988), which creates, in North Carolina citizens, a reasonable expectation of privacy in telephone calls made and received on their private lines. During the hearing on the defendant's motion, the parties stipulated that these records were maintained by Southern Bell in the regular course of business, and the evidence shows that the information was used to generate customers' bills. The records of the defendant's calls show that some 228 calls were made from the number Bateman testified was the defendant's telephone number to the number Bateman testified was his.

At the close of the State's evidence, the defendant moved to dismiss charges of conspiracy to commit an assault on Johnson with a deadly weapon inflicting serious injury and solicitation to commit an assault on Johnson with a deadly weapon inflicting serious injury, on the grounds that the State did not produce sufficient evidence to sustain a jury verdict on the charges. The trial court denied the motion. The defendant offered no evidence.

## STATE v. SUGGS

[117 N.C. App. 654 (1995)]

The issues are whether (I) the record, which is devoid of any evidence regarding the State's acquisition of telephone records maintained by the telephone company, shows sufficient action attributable to the State to implicate the defendant's rights against unreasonable search and seizure; (II) the trial court erred in denying the defendant's motion for a mistrial, based on Bateman's offer, in the presence of the jury, to take a polygraph test; and (III) in the absence of any evidence that the use of a deadly weapon was contemplated, the State presented sufficient evidence to sustain convictions of solicitation and conspiracy to commit assault with a deadly weapon inflicting serious injury.

I

**[1]** The State argues that the defendant fails to show that her rights against unreasonable search and seizure have been implicated because the State was not involved in the maintenance or production of the telephone records, and that in any event, the defendant does not have standing to challenge the admissibility of the telephone records because she has no reasonable expectation of privacy. We agree with the State's argument that there is not sufficient action attributable to the State.

Assuming that the defendant has standing under the North Carolina Constitution, *see People v. Corr,* 682 P.2d 20, 27-28 (defendant had expectation of privacy in records of phone calls individually billed and the government's obtaining and using these records was a search, requiring a warrant), *cert. denied,* 469 U.S. 855, 83 L. Ed. 2d 115 (Colo. 1984); *State v. Hunt,* 450 A.2d 952, 955-57 (N.J. 1982) (because of New Jersey public policy, evidenced by statute criminalizing phone taps, telephone records that reveal numbers dialed from an individual's home are protected under the New Jersey constitution); *but see State v. Melvin,* 86 N.C. App. 291, 296, 357 S.E.2d 379, 382 (1987) (there is no expectation of privacy, under either United States or North Carolina constitutions, in bank records maintained in ordinary course of bank's business), she has failed in her burden of showing sufficient action attributable to the State which would implicate the constitutional protections against unreasonable search and seizure. *See State v. Sanders,* 327 N.C. 319, 331, 395 S.E.2d 412, 420 (1990) (protection against unreasonable search and seizure applies only to governmental actions and the "party challenging admission of the evidence has the burden to show sufficient government involvement in the private citizen's conduct to warrant fourth amendment

scrutiny"), *cert. denied Sanders v. North Carolina,* 498 U.S. 1051, 112 L. Ed. 2d 782 (1991). Assuming the State had obtained the telephone records prior to trial, which the record implies, there is no evidence of how they were obtained. The record does reveal that the telephone records were originally recorded in the usual course of Southern Bell's business and not under some State directive. *See State v. Kornegay,* 313 N.C. 1, 10, 326 S.E.2d 881, 890 (1985) ("Mere acceptance by the government of materials obtained in a private search is not a seizure so long as the materials are voluntarily relinquished to the government."). Even if the State acquired the records through its subpoena power, which the defendant contends would provide sufficient action attributable to the State, *see United States v. Miller,* 425 U.S. 435, 443, 48 L. Ed. 2d 71, 79 (1976) (federal act requiring banks to keep certain records may combine with government subpoena power to create state action in the government's acquisition of bank records), there is no such subpoena in the record. Furthermore, we reject the defendant's argument that sufficient action attributable to the State exists because the State called the Southern Bell employee to testify about and produce the records at trial. *See Kornegay,* 313 N.C. at 8-12, 326 S.E.2d at 889-91 (no state action where witness testified of her own volition at trial). Accordingly, there being no evidence of sufficient action attributable to the State in the record, the defendant's constitutional protection against unreasonable search and seizure is not implicated and the trial court did not err in admitting the telephone records at her trial.

II

[2] The defendant argues that Bateman's offer to take a polygraph test was prejudicial error, requiring a mistrial be granted and that the instruction given did not cure the error. The State, however, argues that any error was cured by the trial court's instructions to the jury. We agree with the State.

A mistrial should be granted "only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict," and such ruling is within the trial court's sound discretion. *State v. Harris,* 323 N.C. 112, 125, 371 S.E.2d 689, 697 (1988). Although parties may not introduce polygraph results directly or indirectly, "every reference to a polygraph test does not necessarily result in prejudicial error." *State v. Montgomery,* 291 N.C. 235, 244, 229 S.E.2d 904, 909 (1976) (defendant was not prejudiced where witnesses' reference to polygraph test was unintentionally elicited on

cross-examination, and the court allowed defendant's motion to strike and instructed the jury not to consider the statement).

Bateman's statement that he would take a polygraph test was unintentionally elicited by the defendant after intense cross-examination and during a trial revealing inconsistencies in Bateman's testimony. The trial court allowed the defendant's motion to strike Bateman's statement and immediately instructed the jury to disregard the statement, consistent with the trial court's action in *Montgomery*. The court further asked the jury if they could in fact disregard the statement, to which question the jury answered in the affirmative. "We assume, as our system for administration of justice requires, that the jurors in this case were possessed of sufficient character and intelligence to understand and comply with this instruction by the court." *Montgomery*, 291 N.C. at 244, 229 S.E.2d at 909. Thus, the trial court did not abuse its discretion in denying the defendant's motion for a mistrial.

### III

**[3]** Solicitation requires a request of another to commit a crime, and conspiracy requires "an agreement [between] two or more persons to do an unlawful act." *State v. Richardson*, 100 N.C. App. 240, 247, 395 S.E.2d 143, 147-48 (comparing the crimes of solicitation and conspiracy), *appeal dismissed, disc. rev. denied*, 327 N.C. 641, 399 S.E.2d 332 (1990). Thus, to hold a defendant liable for the substantive crime of solicitation, the State must prove a request to perform every essential element of the crime. To hold a defendant liable for the substantive crime of conspiracy, the State must prove an agreement to perform every element of the crime. *See id.* (the State must show a request or agreement to commit *the crime or unlawful act*); *see also State v. Brown*, 67 N.C. App. 223, 235, 313 S.E.2d 183, 191 (sufficient evidence of a deadly weapon for conspiracy to commit felonious assault existed when the defendant gave his co-conspirator a knife before the assault), *appeal dismissed*, 311 N.C. 764, 321 S.E.2d 147 (1984).

The defendant was charged and tried for solicitation and conspiracy to commit assault with a deadly weapon inflicting serious injury on Johnson. The crime of assault with a deadly weapon inflicting serious injury requires that the State produce evidence that a deadly weapon was used in the assault. N.C.G.S. § 14-32 (1993). Thus, to survive the defendant's motion to dismiss, the solicitation and con-

spiracy charges required that the State produce substantial evidence, which considered in the light most favorable to the State, would allow a jury to find beyond a reasonable doubt that the defendant and Bateman contemplated the use of a deadly weapon in carrying out the assault on Johnson. *See State v. McConnaughey*, 66 N.C. App. 92, 94, 311 S.E.2d 26, 28 (1984). In this case, there is no evidence of how Bateman was to inflict the severe injury on Johnson. Furthermore, contrary to the State's argument, the mere fact that the defendant asked Bateman to inflict serious injury on Johnson does not necessarily imply the use of a deadly weapon. Our legislature has recognized that serious injury can be inflicted on a person without the use of a deadly weapon. *Compare* N.C.G.S. § 14-33(b)(1) (misdemeanor to assault another and inflict serious injury) *with* N.C.G.S. § 14-32(b) (class H felony to inflict serious injury by the use of a deadly weapon). Accordingly, the trial court erred in submitting the charges of conspiracy and solicitation to commit assault with a deadly weapon inflicting serious injury on Johnson to the jury.

This error, however, does not require, that we reverse the trial court's denial of her motion to dismiss, vacate the jury verdicts on these charges, and acquit her, as the defendant contends. In finding the defendant guilty of the charges of solicitation and conspiracy to commit assault with a deadly weapon inflicting serious injury on Johnson, the jury necessarily found the facts establishing the crimes of conspiracy and solicitation of misdemeanor assault. It follows, therefore, that the verdicts returned by the jury must be considered verdicts of guilty of conspiracy to commit misdemeanor assault on Johnson and solicitation of misdemeanor assault on Johnson. We therefore vacate the defendant's convictions of conspiracy to commit assault with a deadly weapon inflicting serious injury on Johnson and solicitation to commit assault with a deadly weapon inflicting serious injury on Johnson and remand this case for entry of judgment and re-sentencing on the lesser included offenses of conspiracy and solicitation of misdemeanor assault, under N.C. Gen. Stat. § 14-33(b). *See State v. Owens*, 65 N.C. App. 107, 109-10, 308 S.E.2d 494, 497 (1983); *see also State v. Jolly*, 297 N.C. 121, 130, 254 S.E.2d 1, 7 (1979) (remanding for re-sentencing on lesser included offense where evidence is insufficient for one element of greater offense and even though the lesser included offense was not originally submitted to the jury).

Nos. 92CRS92796, 92CRS92799, Suggs related offenses—No error.

Nos. 93CRS3146, 93CRS5602, Johnson related offenses— Remanded for re-sentencing.

Judges EAGLES and WALKER concur.