TYSON, Judge.
*157 Paul Gregory Perry ("Defendant") appeals from judgment entered after a jury convicted him of: (1) trafficking heroin by possession; (2) trafficking heroin by sale; (3) maintaining a dwelling place for the sale of *158 a controlled substance; (4) trafficking heroin by transportation; and (5) conspiracy to traffic heroin by possession, transportation, and sale. We find no error in Defendant's conviction or judgments entered thereon.
I. Factual Background
A. State's Evidence
The State's evidence tended to show that on 10 December 2012, Raleigh Police Department detective M.K. Mitchell ("Detective Mitchell") arrested Kenneth Holderfield ("Holderfield") for possession of marijuana. Holderfield provided Detective Mitchell with the telephone number of his drug supplier, whom Holderfield referred to as "Sincere." Holderfield also called the number and placed the call on the speaker while in the presence of Detective Mitchell. Detective Mitchell testified he heard Sincere state "he *531 was in Charlotte and would be coming to Raleigh tomorrow." Detective Mitchell also testified Holderfield asked Sincere if he would "front [Holderfield] eight grams." Sincere replied, "We'll talk about it when I get to Raleigh tomorrow."
The following day, Detective Mitchell submitted a sworn application for a phone records production order to access records associated with the telephone number provided by Holderfield, pursuant to 18 U.S.C. § 2703(d) and N.C. Gen.Stat. §§ 15A-261, 15A-262, and 15A-263, to the Wake County Superior Court. The application sought complete account and billing information, and complete call detail records "with cell site information including latitude, longitude, sector azimuth and orientation information for the target telephone number(s)" for the period from 13 November 2012 through 12 December 2012. Detective Mitchell's application also requested "precision location/GPS, E911 locate or Mobile Locate Service if applicable from December 11, 2012 through December 12, 2012."
Detective Mitchell's duly sworn statement stated:
The Raleigh Police Department is conducting an investigation of a Drug Trafficking case that occurred in Raleigh. There is probable cause to believe that records for [Defendant's telephone number] constitute evidence of a crime and/or the identity of a person participating in this crime, to wit:
This cellular telephone number was obtained from a cooperating defendant who was arrested as a result of drug trafficking. The possessor of the phone ... is being investigated as a major drug trafficker in the Raleigh area.
*159 This information has been corroborated by this Detective. It is believed that information received in the records requested in this court order will be crucial in the progression of this investigation.
Superior Court Judge Lucy N. Inman signed the order and Detective Mitchell submitted it to AT & T, the cellular phone service provider and holder of the account associated with the phone number. AT & T provided the records of the location of the cell phone tower "hits" or "pings" whenever a call was made to or from the cell phone. AT & T sent emails of the longitude and latitude coordinates of these historical cell tower "hits" to Detective Mitchell every fifteen minutes. Detective Mitchell testified an approximately five- to seven-minute delay occurred between the time the phone "pinged" a cell phone tower and the time AT & T received and calculated the location and sent the latitude and longitude coordinates to him.
After receiving the emails of the records from AT & T, Detective Mitchell entered the coordinates into a Google Maps search engine to determine the physical location of the last tower "pinged" from Defendant's phone. Detective Mitchell testified "the hits can range from ... [a] five or seven meter hit to a couple hundred meter hit," which alerts law enforcement to the general area of the phone's last "pinged" location.
On 11 December 2012, at approximately 4:00 p.m., Detective Mitchell received a record of a "hit" from one of AT & T's cell towers, which placed the phone within a few meters of the Red Roof Inn, located on South Saunders Street, near Interstate 40 in Raleigh, North Carolina. Detective Mitchell and other law enforcement officers from the Criminal Drug Enterprise Unit of the Raleigh Police Department began conducting surveillance from unmarked vehicles stationed around the Red Roof Inn. Detective Mitchell testified he received a record, which allowed him to further "pinpoint" the phone's location "down to a certain amount of rooms" in the hotel.
Lieutenant Norris Quick ("Lieutenant Quick") received confirmation from the hotel's front desk clerk that "someone had just checked into" one of the rooms located within the block of rooms Detective Mitchell had identified. The front desk clerk gave the officers the key to the room next to the room recently occupied.
Lieutenant Quick and another officer conducted surveillance from the adjacent room. Lieutenant Quick observed two men enter the adjoining hotel room and leave after approximately five minutes. The officers *160 inside the hotel room transmitted a description of the men leaving the room to officers *532 stationed outside of the hotel. Detective Mitchell and Detective Bruce Richard Bizub ("Detective Bizub") were inside an unmarked patrol car and saw one of the men enter a Toyota Corolla and drive away. The officers followed the vehicle and "started calling on the radio for marked units in the area."
Eventually, a marked patrol vehicle initiated a traffic stop within two miles of the Red Roof Inn. The driver of the Toyota Corolla was identified as Kenneth Wheeler ("Wheeler"). The officers found ten bindles of heroin on Wheeler's person. Wheeler was arrested and told the officers he had obtained the heroin from the Red Roof Inn. Detective Mitchell began preparing an application for a search warrant for Defendant's hotel room.
Before Detective Mitchell could complete the search warrant, Lieutenant Quick transmitted a request for backup at the hotel. Four individuals were leaving the adjoining room in a hurry. Someone had apparently called the occupants to warn them Wheeler had been stopped and arrested. The officers detained three males, including Defendant, and one female in the hallway.
The officers observed two black plastic grocery bags located on the floor near the four individuals. The bags were open to allow the officers to see inside. The bags contained brown boxes, rubber bands, and digital scales. Detective Mitchell testified, based on his training and experience, he recognized the brown boxes as the type used to contain plastic bags of heroin.
While the four individuals were standing in the hallway, the female suspect, Kiara Ledbetter ("Ledbetter"), voluntarily removed a large bag from inside her pants and gave it to Lieutenant Quick. Lieutenant Quick testified Ledbetter told him, "Oh, no, I'm not going down for this. This isn't mine. It's Paul's." The bag appeared to contain heroin.
Defendant, Ledbetter, and the two other individuals, Keyondre Owens ("Owens") and Paul Shell ("Shell"), were taken into custody, advised of their Miranda rights, and searched by Detectives Mitchell and Bizub. Shell possessed ten bindles of a substance believed to be heroin in the front pocket of his jeans. Defendant possessed $1,620 in cash, but no heroin on his person. A forensic drug chemist with the City-County Bureau of Identification subsequently confirmed the identity of the substances as heroin, including the bindles found on Wheeler during the traffic stop.
*161 On 11 March 2013, a grand jury indicted Defendant for: (1) trafficking by possession, 28 grams or more of heroin; (2) trafficking heroin by sale; and (3) maintaining a dwelling used for keeping or selling controlled substances. On 8 July 2013, Defendant was also indicted for: (1) trafficking heroin by transportation; and (2) conspiracy to traffic heroin by possession, transportation, and sale.
B. Defendant's Motion to Suppress
On 13 November 2013, Defendant filed a pretrial motion to suppress the search of telephone records and determination of the location of his cell phone, and any evidence seized as a result of these searches. He argued law enforcement's receipt of the records of the coordinates of the towers his cell phone had "pinged" constituted an unreasonable search without a warrant based upon probable cause in violation of the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States, and under Article I, Section 20 of the Constitution of North Carolina. Defendant also moved to suppress statements he made to officers on 11 and 12 December 2012, and to suppress evidence obtained as a result of an unconstitutional search and seizure.
The trial court heard Defendant's motions prior to trial on 3 February 2014 and entered a written order denying Defendant's motions to suppress on 20 February 2014. In its order, the trial court made the following findings of fact:
11. That on December 11, 2012, M.K. Mitchell appeared before the Honorable Lucy N. Inman, Superior Court Judge, and presented to her an Application For Phone Records together with a proposed Order concerning [Defendant's] cell phone number....
....
*533 20. That Detective Mitchell was possessed of sufficient facts to conclude that violations of the North Carolina controlled substances laws were being committed and were about to be committed by the person possessing the cell phone ... at the time he made the Application.
21. That the Application contained a sufficient factual basis from which a neutral magistrate could conclude that the issuance of the Order was appropriate in order to assist in the investigation of violation of drug trafficking laws.
*162 22. That the contents of the Application contained the identity of the law enforcement officer making the application ... and the identity of the Law Enforcement Agency conducting the investigation....
23. That the contents of the Application also contained a certification that the information sought in the Phone Records Production Order will assist with the investigation of this drug trafficking case.
24. That the contents of the Application in the Order tendered to Judge Inman complies with [N.C. Gen.Stat. §§ ] 15A-262 and 263 and with 18 U.S.C. [§ ] 2703.
C. Defendant's Testimony at Trial
Defendant's case proceeded to trial before a jury on 3 February 2014. Defendant testified he was a heroin user, and Ledbetter sold heroin. He stated he had traveled to Raleigh with Shell and Owens to purchase heroin from Ledbetter. Defendant stated he rented a room at the Red Roof Inn. He traveled to the train station to pick up Ledbetter and drove her back to the Red Roof Inn. Shell and Owens were inside the hotel room "bagging up" heroin. Defendant testified the heroin was already in the hotel room when he arrived, but he helped Shell and Owens bag it. Defendant also testified he did not sell heroin to anyone from the hotel room, and only Shell and Ledbetter had brought heroin into the hotel room.
The jury returned a verdict of guilty on all five charges. The trial court sentenced Defendant to mandatory minimum sentences of 225 to 282 months imprisonment for his three trafficking convictions, to run consecutively. The trial court also sentenced Defendant to 14 to 26 months imprisonment for sale of heroin, and 6 to 8 months imprisonment for intentionally maintaining a dwelling for keeping or selling controlled substances, to run concurrently with the mandatory sentences.
Defendant gave notice of appeal in open court.
II. Issues
Defendant argues the trial court erred by: (1) denying his motion to suppress evidence obtained by using "real-time tracking" of his cell phone without a warrant; and (2) reviewing and sealing relevant documents without disclosure to Defendant.
*163 III. Fourth Amendment Analysis
Defendant argues the trial court erred by denying his motion to suppress any evidence obtained as a result of an unlawful search of his cell phone records and location of his phone. He contends his Fourth and Fourteenth Amendment rights under the Constitution of the United States, and under N.C. Const. art. I, § 20, the analogous provision of the Constitution of North Carolina, were violated because law enforcement obtained this information without a search warrant based on probable cause.
A. Standard of Review
Appellate review of a suppression order "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Cooke, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982) (citations omitted). Whether the findings of fact support the conclusions of law is reviewed de novo. State v. Baublitz, 172 N.C.App. 801, 806, 616 S.E.2d 615, 619 (2005). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." State v. Williams, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citations and internal quotation marks omitted).
*534 B. The Stored Communications Act
Third-party records pertaining to Defendant's cell phone were obtained from AT & T, pursuant to a judicial order issued under the Stored Communications Act ("the SCA"), as codified in 18 U.S.C. § 2703 (2013), and N.C. Gen.Stat. §§ 15A-261, 15A-262, and 15A-263. The SCA authorizes a governmental entity to "require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service[.]" 18 U.S.C. § 2703(c)(1) (2013). The SCA requires the governmental entity to obtain one of the following prior to disclosure: (1) a warrant; (2) a court order; or (3) the consent of the subscriber or customer. 18 U.S.C. § 2703(c)(1)(A)-(C). 18 U.S.C. § 2703(c)(1) specifically excludes the contents of communications from being disclosed. Id.
A court order compelling disclosure pursuant to 18 U.S.C. § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe *164 that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (emphasis supplied).
C. Historical Versus "Real-time" Information
Defendant asserts the AT & T records obtained via his cell phone constituted "real-time" information, and argues a search warrant supported by probable cause was required. We disagree. Courts in other jurisdictions, which have considered disclosure of records under the SCA, have concluded the federal statute permits the disclosure of "historical," as opposed to "real-time," information.
The majority of federal courts which have considered the issue have concluded that "real-time" location information may only be obtained pursuant to a warrant supported by probable cause. See United States v. Espudo, 954 F.Supp.2d 1029, 1034-35 (S.D.Cal.2013). The distinguishing characteristic separating historical records from "real-time" information is the former shows where the cell phone has been located at some point in the past, whereas the latter shows where the phone is presently located through the use of GPS or precision location data. See In re Application of U.S. for Historical Cell Site Data, 724 F.3d 600, 615 (5th Cir.2013) (holding the receipt of cell site location information under the SCA does not categorically violate the Fourth Amendment as to historical information, but expressly limiting this holding to historical information only); In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't, 620 F.3d 304, 307-08 (3rd Cir.2010) ("[T]here is no dispute that historical [cell site location information] is a 'record or other information pertaining to a subscriber ... or customer[.]' ").
Several courts have held the SCA permits a government entity to obtain cell tower site location information from a third-party service provider in situations where the cell tower site location information sought pre-dates the court order and where the cell tower site location information is collected after the date the court order issues. Although the former may technically be considered "historical" while the latter is "prospective" in relation to the date of the court order, both are considered "records" under the SCA. The government entity only receives this information after it has been collected and stored by the third-party service provider. See United States v. Booker, No. 1:11-CR-255-1-TWT, 2013 WL 2903562, at *6 (N.D.Ga. June 13, 2013) (holding "[t]he SCA makes no distinction between historical and prospective cell site location information"); In re Application of the U.S. for an Order for Disclosure of *165 Telecomms. Records & Authorizing the Use of a Pen Register and Trap and Trace, 405 F.Supp.2d 435, 444 (S.D.N.Y.2005) (holding prospective cell site data is "information" under the SCA "inasmuch as cell site information is transmitted to the Government only after it has been in the possession of the cell phone company" and noting nothing in the SCA limits when "information may come into being" leaving it "susceptible to an interpretation that the 'information' sought might come into being in the future"); In re Application of the U.S. *535 for an Order Authorizing the Use of Two Pen Register and Trap and Trace Devices, 632 F.Supp.2d 202, 207 n. 8 (E.D.N.Y.2008) ("The prospective cell-site information sought by the Government ... becomes a[n] 'historical record' as soon as it is recorded by the [third-party] provider.").
Defendant cites two cases in his brief from the state courts of New Jersey and Florida, which held an individual's reasonable expectation of privacy is implicated by "real-time" cell phone tracking, and a warrant is required. See Tracey v. Florida, 152 So.3d 504 (2014) (holding police officers' use of "real-time" cell tower site location information to track defendant was a search falling under the purview of the Fourth Amendment); State v. Earls, 214 N.J. 564, 70 A.3d 630 (2013) (holding a warrant is required for the use of "real-time" cell tower site location information because Article I, Paragraph 7 of the New Jersey Constitution provides greater protection against unreasonable searches and seizures than the Fourth Amendment).
After careful review of the record and trial transcripts, we conclude the cell tower site location information acquired and stored by AT & T and provided to the officers were historical records. The cases Defendant relies on are inapplicable to the facts before us. North Carolina appellate courts have held Article I, Section 20 of the Constitution of North Carolina provides the same protections against unreasonable search and seizure as the Fourth Amendment to the Constitution of the United States. See State v. Arrington, 311 N.C. 633, 643, 319 S.E.2d 254, 260 (1984) (citation omitted).
Detective Mitchell testified the emails he received of records from AT & T consisted of latitudinal and longitudinal coordinates of the cell towers Defendant's cell phone "pinged" when connected. He further testified "[t]hey're historical hits; they're not active [or] right on time" and there is "probably a five- or seven-minute delay." Other evidence shows AT & T emailed the delayed recorded information to Detective Mitchell every fifteen minutes.
*166 Detective Mitchell and the other officers followed Defendant's historical travel by entering the coordinates of cell tower "pings" provided by AT & T into a Google Maps search engine to determine the physical location of the last tower "pinged." Defendant's cell phone was never contacted, "pinged," or its precise location directly tracked by the officers. The officers did not interact with Defendant's cell phone, nor was any of the information received either directly from the cell phone or in "real time." All evidence shows the cell tower site location information provided by AT & T was historical stored third-party records and properly disclosed under the court's order as expressly provided in the SCA. 18 U.S.C. § 2703(d). This argument is overruled.
D. Reasonable Expectation of Privacy
Since the location information acquired from Defendant's cell phone was "historical," rather than "real-time," we address whether the retrieval of this information constituted a search under the Fourth Amendment, and required a warrant. Whether the retrieval of cell tower site location information, triggered by Defendant's use of his cell phone, constituted a "search" hinges on whether Defendant can show either a trespass or a reasonable expectation of privacy in the information his cell phone transmitted to AT & T. The Supreme Court of the United States has not decided whether historical cell tower site location information raises Fourth Amendment issues. Similarly, this issue appears to be a case of first impression for North Carolina appellate courts.
The Fourth Amendment to the Constitution of the United States, as made applicable to the sovereign states through the Fourteenth Amendment, provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV.
Subject to "a few specifically established and well-delineated exceptions," the *536 Fourth Amendment protects privacy interests by prohibiting officers from conducting a search without a valid warrant based on probable cause. Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971) ; see also State v. Allison, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979). *167 The analogous provision in the Constitution of North Carolina, Article I, the Declaration of Rights, Section 20, provides "[g]eneral warrants, whereby any officer or other person may be commanded to search suspected places without evidence of the act committed, or to seize any person or persons not named, whose offense is not particularly described and supported by evidence, are dangerous to liberty and shall not be granted." N.C. Const. art. I, § 20. Our Supreme Court has held Article I, Section 20 provides the people the same protection against unreasonable searches and seizures as the Fourth Amendment of the Constitution of the United States. Arrington, 311 N.C. at 643, 319 S.E.2d at 260 (holding Article I, Section 20 of the Constitution of North Carolina provides the same protections against unreasonable searches and seizures as the Fourth Amendment); State v. Garner, 331 N.C. 491, 506, 417 S.E.2d 502, 510 (1992) (citations omitted) (holding "there is nothing to indicate anywhere in the text of Article I, Section 20 any enlargement or expansion of rights beyond those afforded in the Fourth Amendment as applied to the states by the Fourteenth Amendment").
Defendant argues his Fourth Amendment rights were violated when law enforcement obtained historical cell tower site location information transmitted from his cell phone, without a warrant and without probable cause, in order to locate him. We disagree.
A "search" occurs under the Fourth Amendment in one of two circumstances. Under the common law "trespass theory," a search occurs upon a physical intrusion by government agents into a constitutionally protected area in order to obtain information. United States v. Jones, ---U.S. ----, ----, 132 S.Ct. 945, 949-50, 181 L.Ed.2d 911, 918 (2012). Without a physical trespass and under the more commonly employed "reasonable expectation of privacy theory," a search occurs when the government invades reasonable expectations of privacy to obtain information. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967) (holding "the Fourth Amendment protects people, not places" and finding an unconstitutional search in the attachment of an eavesdropping device to a public telephone booth without a warrant).
Under Katz and subsequent cases, the test for whether an unreasonable search occurred depends on whether: (1) "the individual manifested a subjective expectation of privacy in the object of the challenged search[;]" and, (2) "society is willing to recognize that expectation as reasonable." Kyllo v. United States, 533 U.S. 27, 33, 121 S.Ct. 2038, 2042-43, 150 L.Ed.2d 94, 101 (2001) (citation and internal quotation marks omitted).
*168 The State argues Defendant cannot assert any reasonable expectation of privacy in the non-content information his phone transmitted to, and which became a record stored by, AT & T, a third party. The State contends no " search" occurred, and neither the Fourth Amendment nor the analogous provision in the Constitution of North Carolina are implicated by these facts. The State relies on several Supreme Court of the United States cases, which held a defendant lacked a reasonable expectation of privacy in information he provided to a third party, which the third party later provided to a government entity.
In United States v. Miller, the Supreme Court of the United States held the defendant had no reasonable expectation of privacy in his bank records, maintained by the bank and procured by governmental subpoena. 425 U.S. 435, 442-43, 96 S.Ct. 1619, 1623-24, 48 L.Ed.2d 71, 79 (1976). The Court stated:
[T]he Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose *537 and the confidence placed in the third party will not be betrayed.
Id. at 443, 96 S.Ct. at 1624, 48 L.Ed.2d at 79 (citations omitted).
In Smith v. Maryland, the Supreme Court of the United States considered whether the defendant had a reasonable expectation of privacy in the telephone numbers he dialed on his home telephone. 442 U.S. 735, 737, 99 S.Ct. 2577, 2578-79, 61 L.Ed.2d 220, 225 (1979). At the government's request, the telephone company installed a pen register to obtain the defendant's call history.
Applying the reasoning set forth in Miller, the Court held the acquisition of this information by the government did not constitute a search, because the defendant had no "legitimate expectation of privacy" in the numbers he dialed on his phone. Id. at 742, 99 S.Ct. at 2581, 61 L.Ed.2d at 227. The Court explained "even if [the defendant] did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not one that society is prepared to recognize as reasonable," and explicitly held "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties. " Id. at 743-44, 99 S.Ct. at 2582, 61 L.Ed.2d at 229 (emphasis supplied) (citations and internal quotation marks omitted).
This Court has expressly recognized the third-party doctrine discussed in Miller and Smith as an exemption from the requirement of a *169 warrant based upon probable cause. See State v. Suggs, 117 N.C.App. 654, 659-60, 453 S.E.2d 211, 214-215 (1995) (holding "the defendant's constitutional protection against unreasonable search and seizure is not implicated" where telephone records were obtained from third-party telephone company); State v. Melvin, 86 N.C.App. 291, 295-96, 357 S.E.2d 379, 382-83 (1987) (holding SBI obtaining defendant's bank records from the bank "could not constitute a governmental 'search' for Fourth Amendment purposes" because defendant had no Fourth Amendment privacy interest in records maintained by third party); State v. Overton, 60 N.C.App. 1, 31, 298 S.E.2d 695, 713 (1982) (holding Miller was controlling and defendant's Fourth Amendment rights were not violated when the government obtained information from his bank account, credit union account, and telephone records maintained by third party).
In a case decided after Miller and Smith, but prior to the present technological state of cellular communications, the Supreme Court of the United States addressed electronic tracking of individuals. In United States v. Knotts, government agents located an illegal drug lab by installing an electronic "beeper" into a container of chemicals. 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). The battery-operated radio transmitter emitted a signal that could be retrieved and tracked with a radio receiver. The beeper was installed with the consent of the owner of the container prior to its sale to the defendant. Law enforcement received the signals from the beeper to track the defendant to his cabin. The Court held neither a search nor a seizure had occurred, because tracking the vehicle carrying the container on public roads and into an open field did not invade any reasonable expectation of privacy. Id. at 285, 103 S.Ct. at 1087, 75 L.Ed.2d at 64.
The Supreme Court of the United States has not ruled on whether citizens have a reasonable expectation of privacy in the disclosure of their approximate and historical locations by cell tower site location data under the Fourth Amendment. However, the Court has recognized serious privacy interests are involved in locating, monitoring, and tracking individuals through the use of technological advances. In United States v. Jones, the Supreme Court held the physical attachment of a GPS tracking device to the defendant's vehicle is a trespass and constitutes a search under the Fourth Amendment. - -- U.S. ----, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012).
The majority's opinion in Jones relied upon a trespass-based rationale and held "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.' " Id. at ----, 132 S.Ct. at 949, 181 L.Ed.2d at 918. Justice Sotomayor's concurring opinion in Jones reaffirmed the Court's continued adherence *170 to Katz, stating "even in the absence of a trespass, a Fourth Amendment *538 search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." iD. at ----, 132 S.CT. at 954-55, 181 l.ED.2d at 924 (sOtomayor, j., concurring) (citations and internal quotation marks omitted).
Justice Sotomayor's opinion also warns of inevitable changes in society's reasonable expectations of privacy as technology advances. Id. at ----, 132 S.Ct. at 955, 181 L.Ed.2d. at 925 ("[T]he same technological advances that have made possible nontrespassory surveillance techniques will also affect the Katz test by shaping the evolution of societal privacy expectations.").
In his separate concurring opinion, Justice Alito noted:
[T]he Katz test rests on the assumption that this hypothetical reasonable person has a well-developed and stable set of privacy expectations. But technology can change those expectations. Dramatic technological change may lead to periods in which popular expectations are in flux and may ultimately produce significant changes in popular attitudes. New technology may provide increased convenience or security at the expense of privacy, and many people may find the tradeoff worthwhile. And even if the public does not welcome the diminution of privacy that new technology entails, they may eventually reconcile themselves to this development as inevitable.
Id. at ----, 132 S.Ct. at 962, 181 L.Ed.2d at 932 (Alito, J, concurring).
Justice Alito's opinion also made keen observations about technological advances, which hold particular relevance at bar. He referred to the emergence of new devices, which permit greater monitoring of an individual's movements in recent years, and stated:
Perhaps most significant, cell phones and other wireless devices now permit wireless carriers to track and record the location of users.... For older phones, the accuracy of the location information depends on the density of the tower network, but new "smart phones," which are equipped with a GPS device, permit more precise tracking. For example, when a user activates the GPS on such a phone, a provider is able to monitor the phone's location and speed of movement.... Similarly, phone-location-tracking services are offered as "social" tools, allowing consumers to find (or to avoid) others who enroll in these *171 services. The availability and use of these and other new devices will continue to shape the average person's expectations about the privacy of his or her daily movements.
Id. at ----, 132 S.Ct. at 963, 181 L.Ed.2d at 933.
The facts in the case before this Court are distinguishable from the facts and ultimate holding in Jones. Unlike in Jones, no physical trespass onto Defendant's person or property occurred. Defendant has not shown any evidence of any GPS or "real-time" tracking. The officers only received the coordinates of historical cell tower "pings" after they had been recorded and stored by AT & T, a third party.
Additionally, the physical trespass in Jones was not authorized by a warrant or court order of any kind. Most importantly, Jones did not rely upon the longstanding principle repeatedly affirmed by the Supreme Court of the United States, the federal courts, and this Court that "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities." Miller, 425 U.S. at 443, 96 S.Ct. at 1624, 48 L.Ed.2d at 79. See also Ostergren v. Cuccinelli, 615 F.3d 263, 282 (4th Cir.2010) ; Doe v. Broderick, 225 F.3d 440, 449 (4th Cir.2000) ; United States v. Horowitz, 806 F.2d 1222, 1226 (4th Cir.1986).
E. Recent Cases from the U.S. Court of Appeals for the Third, Fifth, and Eleventh Circuits
In examining whether Defendant showed a reasonable expectation of privacy in the cell tower site location information stored and transmitted by AT & T, we find several recent decisions from the United States Court of Appeals for the Third, Fifth, and Eleventh Circuits persuasive and instructive.
*539 In In re Application of the United States for an Order Directing a Provider of Electronic Communication Service to Disclose Records to the Government ("In re Application (Third Circuit)"), the Third Circuit held "[cell site location information] from cell phone calls is obtainable under a § 2703(d) order," which "does not require the traditional probable cause determination" necessary for a warrant. 620 F.3d at 313.
In In re Application of the United States for Historical Cell Site Data ("In re Application (Fifth Circuit) "), the Fifth Circuit held a court order issued under 18 U.S.C. § 2703(d) compelling production of a cellular provider's business records showing historical cell tower site location information did not implicate the Fourth Amendment, and no search warrant was required. 724 F.3d at 614-15.
*172 The Fifth Circuit's decision emphasized the cellular company, not the government, was responsible for the initial collection and storage of the cell tower information. Id. at 609-10. The Fifth Circuit's decision stated:
The Government does not require service providers to record this information or store it. The providers control what they record and how long these records are retained.... In the case of such historical cell site information, the Government merely comes in after the fact and asks a provider to turn over records the provider has already created.
Id. at 612.
Their decision also noted these business records do not contain any content of the user's communications and concluded no reasonable privacy was expected in these records because
[a] cell service subscriber, like a telephone user, understands that his cell phone must send a signal to a nearby cell tower in order to wirelessly connect his call.... [and] cell service providers' and subscribers' contractual terms of service and providers' privacy policies expressly state that a provider uses a subscriber's location information to route his cell phone calls. In addition, these documents inform subscribers that the providers not only use the information, but collect it.
Id. at 613.
The Fifth Circuit's decision also analogized the lack of a reasonable expectation of privacy in this case to that in Smith v. Maryland, supra, and stated: "Cell phone users, therefore, understand that their service providers record their location information when they use their phones at least to the same extent that the landline users in Smith understood that the phone company recorded the numbers they dialed." Id.
This decision also agreed with some of the concerns expressed by the concurring Supreme Court Justices in Jones "that technological changes can alter societal expectations of privacy." Id. at 614. See Jones, ---U.S. at ----, 132 S.Ct. at 962-63, 181 L.Ed.2d at 932. However, the Fifth Circuit stated, "[a]t the same time, law enforcement tactics must be allowed to advance with technological changes, in order to prevent criminals from circumventing the justice system." Id. at 614 (citation and internal quotation marks omitted).
*173 The United States Court of Appeals for the Eleventh Circuit, en banc, followed the Fifth Circuit's reasoning and held the defendant did not hold a reasonable expectation of privacy in third-party cell tower records created by the telephone company and turned over to the government. United States v. Davis, 785 F.3d 498, 511 (11th Cir.2015) (en banc ). See also United States v. Skinner, 690 F.3d 772, 778 (6th Cir.2012) (holding "[t]here is no inherent constitutional difference between trailing a defendant and tracking him via [cell site location information] technology").
The Eleventh Circuit's en banc decision reiterated long-standing Fourth Amendment principles.
[L]ike the bank customer in Miller and the phone customer in Smith, [the defendant] can assert neither ownership nor possession of the third-party's business records he sought to suppress....
More importantly, like the bank customer in Miller and the phone customer in Smith, [the defendant] has no subjective or *540 objective reasonable expectation of privacy in MetroPCS's business records showing the cell tower locations that wirelessly connected his calls at or near the time of six of the seven robberies.
Davis, 785 F.3d at 511.
The facts at bar are consistent with the holdings in In re Application (Third Circuit), In re Application (Fifth Circuit) , and Davis. The officers investigating Defendant received historical cell tower site location information, stored as a business record by AT & T, a third party, pursuant to a court order. Defendant voluntarily conveyed this information to AT & T, his service provider.
Law enforcement did not use GPS, "real-time" information, or "ping," track, trace, or otherwise contact Defendant's cell phone. No physical trespass occurred on any of Defendant's person or property, nor was the content of any of Defendant's communication disclosed. Officer Mitchell testified there was a five- to seven-minute delay in the cell tower site information he received from AT & T. Defendant failed to show any reasonable expectation of privacy in these third-party stored records. The acquisition of this information did not constitute a "search" under the Fourth Amendment to the Constitution of the United States or Article I, Section 20 of the Constitution of North Carolina. Defendant's argument is overruled.
*174 F. United States v. Graham
Defendant has filed a Memorandum of Additional Authority citing the United States Court of Appeals for the Fourth Circuit's recent opinion, United States v. Graham. After careful review, we find it clearly distinguishable from the facts at bar. The Fourth Circuit held "the government conducts a search under the Fourth Amendment when it obtains and inspects a cell phone user's historical [cell site location information] for an extended period of time. " Graham, 796 F.3d 332, 344-45 (4th Cir.2015) (emphasis supplied).
In Graham, the government sought cell tower site location information for multiple defendants for a period of 221 days. To the contrary, the officers at bar sought cell tower site location information for only portions of two days, and after Detective Mitchell overheard Defendant tell Holderfield he would be traveling from Charlotte to Raleigh the following day. It cannot reasonably be argued that portions of two days constitutes an "extended period of time," to implicate the Fourth Amendment or Article I, Section 20 of the Constitution of North Carolina. Id. See Jones, --- U.S. at ----, 132 S.Ct. at 964, 181 L.Ed.2d at 934 (Alito, J., concurring) (citation omitted) ("[R]elatively short-term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable."); Skinner, 690 F.3d at 780 (holding DEA agents tracking defendant's cell phone for three days did not rise to "a level of comprehensive tracking that would violate the Fourth Amendment").
The Fourth Circuit's majority opinion purported to distinguish the long-standing tenet of the third-party doctrine that an individual cannot claim a legitimate expectation of privacy in information he has voluntarily turned over to a third party. Smith, 442 U.S. at 743-44, 99 S.Ct. at 2581-82, 61 L.Ed.2d at 229. The Fourth Circuit's majority opinion relied on the notion that the defendants did not "voluntarily disclose" their cell tower site location information to their service providers, and found the third-party doctrine to be inapplicable. This supposition directly contradicts the conclusions reached by all other federal appellate courts, who have considered this question. See Davis, 785 F.3d at 511 (holding defendant had no "objective reasonable expectation of privacy in ... business records showing the cell tower locations that wirelessly connected his calls"); Skinner, 690 F.3d at 777 (holding defendant "did not have a reasonable expectation of privacy in the data given off by his voluntarily procured pay-as-you-go cell phone"); In re Application (Fifth Circuit), 724 F.3d at 615 (holding the government can use "[s]ection 2703(d) orders to obtain ... cell site information" without implicating the Fourth Amendment);
*175 In re Application (Third Circuit), 620 F.3d at 313 (holding that cell tower site location information "is obtainable under a § 2703(d) order and that such an order does not require the traditional probable cause determination").
*541 Judge Motz's dissenting opinion in Graham notes the majority's holding that "cell phone users do not voluntarily convey [cell site location information] misapprehends the nature of [cell site location information], attempts to redefine the third-party doctrine, and rests on a long-rejected factual argument and the constitutional protection afforded a communication's content. " Graham, at 382 (Motz, J., dissenting) (emphasis supplied).
As most cell phone users know all too well, however, proximity to a cell tower is necessary to [place outgoing calls, send text messages, and route incoming calls and messages.] Anyone who has stepped outside to "get a signal," or has warned a caller of a potential loss of service before entering an elevator, understands on some level, that location matters.
A cell phone user thus voluntarily enters an arrangement with his service provider in which he knows that he must maintain proximity to the provider's cell towers in order for his phone to function. Whenever he expects his phone to work, he is thus permitting-indeed, requesting-his service provider to establish a connection between his phone and a nearby cell tower. A cell phone user therefore voluntarily conveys the information necessary for his service provider to identify the [cell site location information] for his calls and texts.
Id. at 383 (citation omitted).
G. Good-Faith Exception
Even if we were to accept Defendant's arguments and find a search warrant based upon probable cause was required under these facts, we hold the good-faith exception to the Fourth Amendment warrant requirement applies, as all three judges on the Fourth Circuit concluded in Graham.
The exclusionary rule "generally prohibits the introduction at criminal trial of evidence obtained in violation of a defendant's Fourth Amendment rights[.]" United States v. Stephens, 764 F.3d 327, 335 (4th Cir.2014) (citation and quotation marks omitted). However, the Supreme *176 Court of the United States recognizes a good-faith exception to the exclusionary rule where law enforcement acts "with an objectively reasonable good-faith belief that their conduct is lawful[.]" Davis v. United States, ---U.S. ----, ----, 131 S.Ct. 2419, 2422, 180 L.Ed.2d 285, 295 (2011) (citation and internal quotation marks omitted). The Court has held the good-faith exception applies where law enforcement relies on a search warrant or other court order issued by a neutral magistrate. United States v. Leon, 468 U.S. 897, 922-23, 926, 104 S.Ct. at 3420-22, 82 L.Ed.2d 677, 698-99 (1984).
The majority opinion in Graham held:
[T]he government is entitled to the good-faith exception because, in seeking Appellants' [cell tower site location information], the government relied on the procedures established in the SCA and on two court orders issued by magistrate judges in accordance with the SCA.... Appellants do not claim that the government was dishonest or reckless in preparing either application. Upon consideration of each of the government's applications, two magistrate judges of the district court respectively issued § 2703(d) orders to Sprint/Nextel for the disclosure of Appellants' account records. There is nothing in the record to suggest that either magistrate abandoned her or his detached and neutral role such that a well trained [sic] officer's reliance on either order would have been unreasonable.
Id. at 362 (citations and internal quotation marks omitted).
The circumstances surrounding the issuance of the court order at bar are nearly identical to those in Graham. Detective Mitchell relied on the procedures established in the SCA when he submitted his sworn application for a phone records production order pursuant to 18 U.S.C. § 2703(d) (2013). Defendant does not argue Detective Mitchell was "dishonest or reckless" in preparing his application. Graham, at 362. There is also nothing in the record to suggest Judge Inman "abandoned her ... detached and neutral role such that a well trained [sic] officer's reliance on either order would have been unreasonable." Id.
The law enforcement officers reasonably relied on the SCA in exercising their option *542 to seek a § 2703(d) order and obtain Defendant's historical stored cell tower site location records from third-party AT & T. The good-faith exception applies to Defendant's Fourth Amendment claims. *177 IV. Disclosure of Sealed Documents
Defendant also argues the State provided documents to the trial court in camera during his trial. Defendant requests this Court to review the documents and determine whether they are material to his guilt, sentencing, or arguments raised on appeal.
A. Standard of Review
The proper standard of review for reviewing sealed documents from the trial court is de novo. State v. Scott, 180 N.C.App. 462, 463-64, 637 S.E.2d 292, 293 (2006) (citations omitted), disc. review denied, 361 N.C. 367, 644 S.E.2d 560 (2007). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." State v. Williams, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citations and internal quotation marks omitted).
B. Analysis
The trial court sealed the documents for appellate review. The documents were not disclosed to Defendant or his counsel. Pursuant to defense counsel's request, the Wake County Clerk of Superior Court provided the sealed documents to this Court for review. If the trial court conducts an in camera inspection of documents, but denies the defendant's request for the documents, they should be sealed and "placed in the record for appellate review." State v. Hardy, 293 N.C. 105, 128, 235 S.E.2d 828, 842 (1977).
On appeal, this Court is required to examine the documents to determine if they contain information that is "both favorable to the accused and material to [either his] guilt or punishment." Pennsylvania v. Ritchie, 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40, 57 (1987) (citations omitted). Defendant is constitutionally entitled to disclosure of this evidence, only if the sealed records contain evidence which is both "favorable" and "material." Id. at 59, 107 S.Ct. at 1002, 94 L.Ed.2d. at 58-59.
We have carefully examined the sealed documents, and conclude they do not contain any information favorable and material to Defendant's guilt or punishment. See State v. McGill, 141 N.C.App. 98, 102-03, 539 S.E.2d 351, 355-56 (2000) (noting favorable evidence "includes evidence which tends to exculpate the accused as well as any evidence adversely affecting the credibility of the government's witnesses" and evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different").
*178 V. Conclusion
The trial court properly denied Defendant's motion to suppress the cell tower site location information obtained by law enforcement. These stored historical records were provided by AT & T, a third party, pursuant to a valid court order. Defendant had no reasonable expectation of privacy in these third-party records. Smith, 442 U.S. at 737, 99 S.Ct. at 2578-79, 61 L.Ed.2d at 225. The procurement of this information was not a "search," and did not require the issuance of a warrant based upon probable cause. Neither the Fourth Amendment of the Constitution of the United States nor Article I, Section 20 of the Constitution of North Carolina was implicated.
We have reviewed the documents sealed by the trial court. Our review shows they contain no favorable or material information to Defendant's guilt or punishment.
Defendant received a fair trial, free from prejudicial errors he preserved and argued. We find no error in Defendant's conviction by the jury or in the trial court's judgment entered thereon.
NO ERROR.
Judge DIETZ concurs.
Chief Judge McGEE concurs in a separate opinion.