STATE v. HOLLOMAN

[231 N.C. App. 426 (2013)]

———————————

STATE OF NORTH CAROLINA
v.
JAMES EDWARD HOLLOMAN III, Defendant

No. COA13-559

Filed 17 December 2013

1. **Constitutional Law—effective assistance of counsel— appointed counsel—not replaced**

    The trial court's denial of defendant's request for substitute counsel in a prosecution for rape, kidnappig and other offenses was proper where appointed counsel was reasonably competent and there was no alleged or apparent conflict between defendant and counsel that would have rendered counsel ineffective.

2. **Constitutional Law—double jeopardy—sentencing—first- degree kidnapping and sexual offense**

    Defendant's conviction and sentencing for both first-degree kidnapping and second-degree sexual offense violated the constitutional prohibition against double jeopardy where the jury returned

STATE v. HOLLOMAN

[231 N.C. App. 426 (2013)]

guilty verdicts for both first-degree kidnapping and second-degree sexual offense but did not specify the statutory ground upon which it relied in finding defendant guilty of kidnapping. Principles of double jeopardy preclude the use of the underlying sexual assault to support first-degree kidnapping and second-degree sexual offense: the ambiguous verdict is construed in favor of defendant by assuming that the jury relied on the sexual assault in finding defendant guilty of first-degree kidnapping.

Appeal by defendant from judgments entered 18 October 2012 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 21 October 2013.

*Roy Cooper, Attorney General, by Daniel D. Addison, Special Deputy Attorney General, for the State.*

*Law Offices of John R. Mills NPC, by John R. Mills, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant James Edward Holloman III appeals from judgments entered upon jury verdicts finding him guilty of first-degree kidnapping, second-degree sexual offense, simple assault, violation of a domestic violence protective order, and impaired driving. For the reasons stated herein, we find no error in the trial but remand the case to the trial court for a new sentencing hearing with respect to the convictions for first-degree kidnapping and second-degree sexual offense.

Complainant and defendant dated for about five years and had a child together. Complainant ended their relationship in February 2011 and obtained a domestic violence protective order against defendant shortly thereafter. In compliance with the protective order, complainant communicated with defendant with regards to their child and met with him to exchange the child for visits. Relations between complainant and defendant became increasingly more cordial during the meetings, and a few days before the incident which gave rise to the charges in this case, complainant and defendant had consensual sex.

On the night of 2 April 2011, complainant and defendant went out for drinks at a club. Complainant testified that defendant began to behave jealously when other men looked at her, grabbing her when she moved away from him and stating "[t]his is mine." Alarmed by his behavior,

complainant asked the club's bouncers to keep defendant away from her, and the bouncers arranged for a cab for complainant.

When complainant arrived at her house, defendant was standing by his car parked in the driveway. In an effort to get away from defendant, complainant asked defendant to pay her cab fare, and as he did so, she got in his car, locked the doors, and started backing out of the driveway. Defendant jumped onto the hood of the car and hung onto the windshield wipers while complainant backed out of the driveway and drove up the street. Not wanting to run over defendant, complainant pulled the car back into the driveway.

Once the car was parked, defendant kicked in the car window, grabbed complainant by her neck, and forced her into the passenger seat. Complainant screamed and struggled to get away as defendant positioned himself on top of her and choked her until she nearly lost consciousness. When he finally let go of her neck, defendant told complainant to shut up, to put on her seat belt, and that she had "four days of this hell coming." Defendant drove the car away, while continuously hitting complainant, calling her names, and accusing her of having sexual relations with other men. Defendant was looking at complainant and hitting her while driving when the car veered off the road and crashed into a ditch. Once the car was stopped, defendant told complainant to perform oral sex on him, and complainant complied out of fear for her life. When defendant finally appeared relaxed and nearly asleep, complainant got out of the car and ran for the nearest house. Just as complainant approached the house, defendant caught up to her. Complainant grabbed a wooden pole that was by the door of the house and attempted to hit defendant with it. Defendant, however, grabbed the pole, yanked complainant down the stairs, and dragged her across the yard while continuing to beat her with it. Defendant then instructed complainant to get up off of the ground, and when she did not do so, defendant kicked her in the face.

Complainant testified that she did not recall exactly how, but that she ended up back in the car with defendant where he threatened to kill her if she tried to escape again. Defendant then forced complainant to perform oral sex and have vaginal and anal sex. Defendant fell asleep thereafter, and complainant flickered the car lights in an attempt to stop passing cars for help while defendant slept.

Defendant later woke up and told complainant to get out of the car and walk with him to get help. Complainant, however, stayed behind because her foot was injured and continued to flicker the car lights until

a passerby stopped and called the police. Defendant returned to the car as the police arrived. Defendant told the police that he had no recollection of the events that occurred after he and complainant had drinks at the club. The State's expert testified that swabs from complainant's vagina and rectum tested positive for defendant's DNA.

Defendant was indicted on two counts of second-degree sexual offense, second-degree rape, first-degree kidnapping, simple assault, violation of a domestic violence protective order, and impaired driving. A jury unanimously acquitted defendant of second-degree rape and one count of second-degree sexual offense and convicted him of the remaining counts. Defendant appeals.

---

On appeal, defendant contends that the trial court erred by (I) failing to inquire into a potential conflict of interest between defendant and his appointed trial counsel, and (II) sentencing defendant for both first-degree kidnapping and second-degree sexual offense.

I.

[1] Defendant first argues that the trial court committed reversible error by failing to conduct an adequate inquiry to determine whether a conflict of interest existed between defendant and his appointed trial counsel when he informed the court of his dissatisfaction with counsel and requested the appointment of new counsel. The court's failure to make such an inquiry, defendant argues, denied him his right to counsel. We disagree.

We review the denial of a defendant's request for the appointment of substitute counsel for an abuse of discretion. *State v. Sweezy*, 291 N.C. 366, 371–72, 230 S.E.2d 524, 529 (1976). An indigent defendant's right to appointed counsel in a criminal prosecution is guaranteed by both the North Carolina Constitution and the Sixth Amendment to the United States Constitution. *State v. Taylor*, 155 N.C. App. 251, 254, 574 S.E.2d 58, 61–62 (2002), *cert. denied*, 357 N.C. 65, 579 S.E.2d 572 (2003). The right to appointed counsel, however, does not "include the privilege to insist that counsel be removed and replaced with other counsel merely because defendant becomes dissatisfied with his attorney's services." *Sweezy*, 291 N.C. at 371, 230 S.E.2d at 528.

A trial court must appoint substitute counsel "whenever representation by counsel originally appointed would amount to denial of defendant's right to effective assistance of counsel." *State v. Thacker*, 301 N.C. 348, 352, 271 S.E.2d 252, 255 (1980). It is thus "the obligation of

the court to inquire into defendant's reasons for wanting to discharge his attorney[] and to determine whether those reasons [are] legally sufficient to require the discharge of counsel." *State v. Hutchins*, 303 N.C. 321, 335, 279 S.E.2d 788, 797 (1981). "A disagreement over trial tactics does not, by itself, entitle a defendant to the appointment of new counsel." *Id.* Rather, in order to warrant the appointment of substitute counsel a "defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Sweezy*, 291 N.C. at 372, 230 S.E.2d at 529 (internal quotation marks omitted).

When a defendant requests the appointment of substitute counsel based on an alleged conflict of interest, "the trial court must satisfy itself only that present counsel is able to render competent assistance and that the nature or degree of the conflict is not such as to render that assistance ineffective." *Thacker*, 301 N.C. at 353, 271 S.E.2d at 256. "Once it becomes apparent that the assistance of counsel has not been rendered ineffective, the trial judge is not required to delve any further into the alleged conflict." *State v. Poole*, 305 N.C. 308, 311–12, 289 S.E.2d 335, 338 (1982). Denial of a defendant's request for substitute counsel is therefore proper, where it appears that counsel is reasonably competent and there is no conflict between defendant and appointed counsel that renders counsel ineffective to represent defendant. *Thacker*, 301 N.C. at 352, 271 S.E.2d at 255.

In the instant case, defendant informed the trial court at a pretrial hearing that he wished to have his appointed counsel relieved so that he could retain other counsel. Defendant did not express any concerns with his appointed counsel, nor did he give the court any reason for wanting to replace his appointed counsel. The court allowed defendant to seek alternate counsel but declined to relieve appointed counsel until defendant had retained new counsel. Defendant did not retain new counsel, and, thus, appointed counsel represented him at trial.

At trial, the court, defendant, and his appointed counsel engaged in the following dialogue:

> THE COURT: The constitution requires that the court appoint you an attorney, not an attorney of your choosing. Mr. Freeman is certainly competent and capable and has been determined to be such to represent individuals charged with these offences [sic]. Is there some specific concern that you have about Mr. Freeman that you'd like to share with the Court?

THE DEFENDANT: I just feel as if I'm being misrepresented, Your Honor. I've asked Mr. Freeman to retrieve some information that would give some validity to my innocence, and I've asked him to subpoena some character witnesses, which he has not done. And I've asked him many things. And even yesterday he misrepresented me because there's [sic] certain things that I believe should have been brought forth that were not. So at this point, I'm being misrepresented, Your Honor.

THE COURT: Mr. Freeman, do you wish to be heard? I don't need to hear about your strategic choices in this case, but are there concerns that you need to bring to my attention that you believe the Court ought to be aware of?

MR. FREEMAN: No, Your Honor.

THE COURT: All right. Based on what I've heard, sir, I'm not going to permit substitution of counsel at this late date. And so the motion is denied.

Defendant argues that the trial court committed reversible error because its inquiry was inadequate to ensure that a conflict of interest did not exist between defendant and his appointed counsel after defendant informed the court that he was "being misrepresented." Defendant, however, presents no direct authority suggesting that a trial court must inquire into a potential conflict of interest where a defendant merely expresses dissatisfaction with appointed counsel.

While we have held that a failure to conduct an adequate inquiry into a potential conflict of interest is reversible error, we have not held that a conviction may be reversed based on conflicts that are neither alleged nor apparent at trial. *See State v. James*, 111 N.C. App. 785, 791, 433 S.E.2d 755, 758–59 (1993) (holding that a trial court's failure to inquire into whether a conflict of interest exists between a defendant and counsel *once the court is made aware of* the possibility of a conflict constitutes reversible error). Defendant's statements to the trial court regarding his appointed counsel neither alleged nor indicated the possibility of a conflict of interest. Rather, his statements merely amounted to statements of his dissatisfaction with his appointed counsel and disagreements over trial tactics; defendant's statements, therefore, did not trigger the need for additional inquiry and did not entitle defendant to the appointment of substitute counsel. *See Hutchins*, 303 N.C. at 335, 279 S.E.2d at 797; *see also State v. Prevatte*, 356 N.C. 178, 216, 570 S.E.2d 440, 461 (2002) ("An indigent defendant has no right to

replace appointed counsel merely because the defendant is dissatisfied with the present attorney's work or because of a disagreement over trial tactics."), *cert. denied*, 538 U.S. 986, 155 L. Ed. 2d 681 (2003). Because appointed counsel was reasonably competent and there was no alleged or apparent conflict between defendant and counsel that would render counsel ineffective to represent defendant, we conclude that the trial court's denial of defendant's request for substitute counsel was proper. Accordingly, defendant's argument is overruled.

## II.

[2] Defendant next argues that his conviction and sentencing for both first-degree kidnapping and second-degree sexual offense violate the prohibition against double jeopardy. The State concedes error. We agree.

The offense of kidnapping is elevated to first-degree kidnapping upon proof that the victim was either not released in a safe place, seriously injured, or sexually assaulted. N.C. Gen. Stat. § 14-39(b) (2011). Where a jury is presented with more than one statutory ground upon which to convict a defendant of first-degree kidnapping and does not specify which one it relied upon to reach its verdict, "[s]uch a verdict is ambiguous and should be construed in favor of defendant." *State v. Whittington*, 318 N.C. 114, 123, 347 S.E.2d 403, 408 (1986), *appeal after remand*, 321 N.C. 115, 361 S.E.2d 560 (1987). A defendant may not be punished for both first-degree kidnapping and the underlying sexual assault that raised the kidnapping to the first degree. *State v. Freeland*, 316 N.C. 13, 23, 340 S.E.2d 35, 40–41 (1986).

The trial court in this case instructed the jury that, to convict defendant of first-degree kidnapping, it had to find that complainant "was not released in a safe place, had been sexually assaulted, or had been seriously injured." The jury returned guilty verdicts for both first-degree kidnapping and second-degree sexual offense but did not specify the statutory ground upon which it relied on in finding defendant guilty of first-degree kidnapping. We must, therefore, construe the ambiguous verdict in favor of defendant and "assume that the jury relied on defendant's commission of the sexual assault in finding him guilty of first-degree kidnapping." *Whittington*, 318 N.C. at 123, 347 S.E.2d at 408. Because defendant was also convicted of second-degree sexual offense, principles of double jeopardy preclude the use of the underlying sexual assault to support the first-degree kidnapping conviction. *See Freeland*, 316 N.C. at 23, 340 S.E.2d at 40–41. Accordingly, we remand the case to the trial court for resentencing.

At the resentencing hearing, the trial court may arrest judgment on the first-degree kidnapping conviction and resentence defendant for second-degree kidnapping or it may arrest judgment on the second-degree sexual offense conviction.

No error, remanded for resentencing.

Judges STEELMAN and DILLON concur.