IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-299

No. COA21-491

Filed 3 May 2022

Edgecombe County, Nos. 18 CRS 52502, 52655, 52686 & 705353

STATE OF NORTH CAROLINA

v.

BENNIE WAYNE STRICKLAND, JR., Defendant.

Appeal by Defendant from judgments entered 25 February 2020 by Judge James E. Hardin, Jr., in Edgecombe County Superior Court. Heard in the Court of Appeals 22 March 2022.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Derek L. Hunter, for the State.*
>
> *William D. Spence for Defendant-Appellant.*

INMAN, Judge.

Defendant Bennie Wayne Strickland, Jr., ("Defendant") appeals from judgments entered following a jury trial finding him guilty of solicitation to commit murder, two violations of domestic violence protection orders, and hit and run with a motor vehicle. On appeal, Defendant argues that the trial court erred in improperly resolving his motion to substitute counsel during trial, denying his motion to dismiss the solicitation charge, failing to intervene *ex mero motu* during the prosecutor's

closing arguments, and in its jury instructions. After careful review, we hold Defendant has failed to demonstrate prejudicial error.

## I. FACTUAL AND PROCEDURAL HISTORY

The record below discloses the following:

Defendant and Carrie Thomas were involved in an on-and-off again romantic relationship. At its start, Defendant told Ms. Thomas that, "if I can't have you, nobody will. If it ain't going to be me, it ain't going to be nobody. I'll kill you."

In the summer of 2017, Ms. Thomas and her children moved in with Defendant. Twenty days later, she moved out because of Defendant's "over-possessive nature," but they continued to see each other. This cycle of breaking up and reuniting continued until, on 2 January 2018, Ms. Thomas secured a domestic violence protection order ("DVPO") against Defendant in an effort to finally end their relationship. Ms. Thomas later dismissed the DVPO. When Defendant then threatened to kill Ms. Thomas and her children by burning down her house with her and her children in it, Ms. Thomas procured a second DVPO against Defendant and an emergency permit to carry a concealed weapon.

Defendant continued to harass Ms. Thomas. Her employer blocked Defendant's phone number because he often called while Ms. Thomas was working. On one occasion, Defendant came to her workplace and parked in an adjacent parking lot, leading Ms. Thomas's supervisor to call the police and take additional

preventative measures to protect Ms. Thomas at work.

On 30 October 2018, Defendant was arrested for violating the DVPO, hit and run, and assault with a deadly weapon after he followed Ms. Thomas to a Bojangles in Tarboro and drove his truck into the back of her vehicle. Defendant was incarcerated in the Edgecombe County Detention Center while awaiting trial. While incarcerated, Defendant called Ms. Thomas multiple times, further violating the DVPO.

During his incarceration, Defendant shared a "pod" with Christian Capps, Jerry Plascencio, David Anderson, and approximately 20 to 30 other inmates. Defendant and Mr. Capps often talked to each other about hating their ex-girlfriends and spoke about killing each other's ex-girlfriends. Messrs. Capps, Plascencio, and Anderson eventually disclosed these conversations to law enforcement and, on 11 March 2019, Defendant was indicted on two counts of solicitation to commit first-degree murder.

Defendant's trial began on 17 February 2020.[1] Mr. Capps testified for the State. Mr. Capps told the jury that he did not initially believe Defendant wanted to kill Ms. Thomas and instead dismissed their conversations as venting or "just jail talk." That impression changed after Mr. Capps told everyone in the pod that he

---

[1] Defendant's earlier charges for violating a DVPO, assault with a deadly weapon, and hit and run were consolidated for trial with his solicitation charges.

would soon make bond and be released before Thanksgiving; upon hearing the news, Defendant gave Mr. Capps a map that he had drawn showing where Ms. Thomas lived. The map included directions, highways, landmarks, and physical descriptions of Ms. Thomas and her car. Defendant told Mr. Capps, "if you go home, you kill my old lady, and I'll kill your old lady in return." Defendant suggested two different ways Mr. Capps could kill Ms. Thomas: (1) by going into her home, making her drink liquor until she passed out, then injecting her with heroin to make it seem like an overdose; or (2) "run up in the house Rambo-style and kill everyone there execution-style." When Defendant later asked for the map back, Mr. Capps told him that he had flushed it down the toilet; however, per Mr. Capps's testimony, he had not in fact flushed the map himself, but had given it to Mr. Plascencio to destroy. Mr. Capps later reported Defendant's comments to members of the Edgecombe County Sheriff's Office, describing the map and its contents to them verbally and by written statement.

¶ 9        One of those law enforcement officers, a sergeant with the Edgecombe County Sheriff's Office investigating Defendant's acts of domestic violence, testified that she was given the map by Mr. Plascencio after interviewing Mr. Capps. She further testified that she also met with Mr. Anderson, who corroborated Mr. Capps's reports with a written statement.

¶ 10        Defendant testified and denied asking Mr. Capps to kill Ms. Thomas.

Defendant instead insisted that he drew the map for Mr. Capps so he could go to Ms. Thomas's house and explain that Defendant had not meant to hit her vehicle. Defendant also denied asking Mr. Capps for the map back.

Defendant was disruptive throughout the trial, incurring twelve convictions for criminal contempt as a result of numerous vulgar outbursts filled with invectives against the judge, the judge's family, the prosecutor, and others. In one lengthy, expletive-ridden tirade, Defendant stated he was dissatisfied with his counsel's cross-examination and believed that his counsel was working with the State to convict him. Later, Defendant told the trial court that he was "requesting that he not be my lawyer because he's ineffective." Defendant reiterated his dissatisfaction with his counsel's cross-examination and lack of objections, as well as his claim that defense counsel was working for the State. Defendant further asserted his attorney—who is Black— would not represent him in good faith because Defendant had been accused of being a member of the Aryan Nation.

The trial court responded to these statements by asking Defendant if he wished to represent himself, to which he replied, "no. I was asking for [counsel] to be replaced." When the trial court informed Defendant that his only option at that juncture was to continue with his current counsel or represent himself, Defendant acceded that he did not want to represent himself and stated he "d[id]n't care what you [the trial court] d[id]." The trial court then concluded that Defendant's request

for new counsel was not the result of an absolute impasse, and instead stemmed from disagreements concerning trial strategy and a desire to "disrupt," interfere with, "and to inject error into this proceeding." And though it identified Defendant's complaints as "without merit" and "frivolous," it ordered Defendant's counsel "to abide by the defendant's wishes to the extent that they are consistent with the law in North Carolina and the rules of professional conduct."

¶ 13      Defendant moved to dismiss the charges against him at the close of the State's evidence; the trial court granted that motion as to one solicitation charge and denied it as to all remaining charges. Defendant later renewed—and the trial court denied— those motions at the close of all evidence. The trial court then conducted the charge conference, during which the court and counsel engaged in the following discussion:

> THE COURT: . . . Now, as to the substantive charges, I am working from pattern instruction 206.17 regarding solicitation to commit murder. It appears to me that although the defendant was charged in an indictment as it relates to Christian Capps with the solicitation to commit first-degree murder, given the fact that General Statute Chapter 14-17(b) essentially says that a charge of solicitation to commit second-degree murder is sentenced as the same as first-degree murder.
>
> It would be my intention to give the pattern instruction which essentially relates to solicitation to commit second-degree murder. What is the position of the State? Since it only requires malice.
>
> THE STATE: That's right. And it's the same level of punishment.

THE COURT: Do you agree with that, [Defendant's counsel]?

[DEFENDANT'S COUNSEL]: Yes, Judge.

THE COURT: That's the way I'll give that instruction. I do not see a lesser included offense, do you agree with that?

THE STATE: That's right.

THE COURT: [Defendant's counsel].

[DEFENDANT'S COUNSEL]: I didn't see any either.

THE COURT: Madam Clerk, that verdict sheet will read guilty of solicitation to commit murder. . . . Does the State of North Carolina agree with the construction of the verdict sheet?

THE STATE: Yes, sir.

THE COURT: Does the defendant agree?

[DEFENDANT'S COUNSEL]: Yes, Judge.

¶ 14     With the jury instructions agreed upon, the trial proceeded to closing arguments. The State urged the jury to believe Mr. Capps's testimony over Defendant's:

> THE STATE: . . . And what else doesn't even make sense about what I contend is an untruthful account of why [Defendant] gave Christian Capps this map. {T p. 1154}.
>
> He told the truth when he could have lied. {T p. 1162}.
>
> . . . .
>
> And when Captain Washington pulled [Capps] into his office[,] [Capps] told the truth because the defendant

scared him. {T p.1164}

. . . .

So[,] is [Capps] being truthful[?] Yes.

¶ 15 The prosecutor also referred to Defendant as "unpredictable," "impulsive," "angry," "obsessed," "frustrated," and "dangerous." She then concluded her closing as follows:

> THE STATE: . . . [T]o protect society, other members of Edgecombe County[,] and in particular[,] this member of society, a verdict of guilty is necessary here.
>
> It's what the law and justice demands here. His presumption of innocen[c]e has been removed and replaced with proof beyond a reasonable doubt. You represent the people of your county right now. You sit as citizens of Edgecombe County. And by your verdict, you not only protect [Ms.] Thomas[,] but every other vulnerable female in Edgecombe County that might find herself in the unfortunate position of being in a domestic relationship with that defendant.

¶ 16 Following deliberations, the jury acquitted Defendant on the charge of assault with a deadly weapon but found Defendant guilty on one count of solicitation to commit murder, two counts of violation of a DVPO, and one count of hit and run with a motor vehicle. The trial court sentenced Defendant to 110 months to 144 months imprisonment for solicitation to commit murder, a consecutive sentence of 150 days imprisonment for the consolidated convictions of violation of a DVPO and hit and run, and another consecutive sentence of 150 days imprisonment for the remaining

violation of DVPO conviction. The court also imposed six separate, consecutive active sentences of 30 days incarceration in the county jail in connection with his criminal contempt during trial. Defendant gave oral notice of appeal in open court.

## II. ANALYSIS

Defendant presents four principal arguments on appeal, asserting the trial court erred in: (1) failing to adequately inquire into Defendant's request for new counsel during trial; (2) denying Defendant's motion to dismiss the second solicitation to commit murder charge; (3) failing to intervene *ex mero motu* during the prosecutor's closing arguments; and (4) instructing the jury on solicitation to commit second-degree murder instead of solicitation to commit first-degree murder as alleged in the indictment. As an alternative to his fourth argument, Defendant further contends that he was denied effective assistance of counsel due to his attorney's accession to the jury instructions. We hold that Defendant has failed to demonstrate prejudicial error.

### A. The Trial Court Did Not Err in Resolving Defendant's Request for Substitute Counsel.

#### 1. *Standard of Review*

We review the denial of a defendant's request for the appointment of substitute counsel for an abuse of discretion. *State v. Sweezy*, 291 N.C. 366, 371-72, 230 S.E.2d 524, 529 (1976). An abuse of discretion occurs when the trial court's decision "is manifestly unsupported by reason or is so arbitrary that it could not have been the

result of a reasoned decision." *State v. McDonald*, 130 N.C. App. 263, 267, 502 S.E.2d 409, 413 (1998) (citation omitted).

### 2. *Discussion*

¶ 19        The State and Federal Constitutions guarantee criminal defendants a right to appointed counsel. *State v. Holloman*, 231 N.C. App. 426, 429, 751 S.E.2d 638, 641 (2013). That right, however, does not "include the privilege to insist that counsel be removed and replaced with other counsel merely because defendant becomes dissatisfied with his attorney's services." *Sweezy*, 291 N.C. at 371, 230 S.E.2d at 528. It is well-established that, in order to warrant appointment of substitute counsel upon request, "a defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Holloman*, 231 N.C. App. at 430, 751 S.E.2d at 641 (citing *Sweezy*, 291 N.C. at 372, 230 S.E.2d at 528). A "disagreement over trial tactics does not, by itself, entitle a defendant to the appointment of new counsel," *State v. Hutchins*, 303 N.C. 321, 335, 279 S.E.2d 788, 797 (1981), and "tactical decisions, such as which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, and what trial motions to make are ultimately the province of the lawyer." *State v. Ali*, 329 N.C. 394, 404, 407 S.E.2d 183, 189 (1991). It is only "when counsel and a fully informed criminal defendant client reach an absolute impasse as to such tactical decisions [that] the client's wishes must control." *Id.*

Whenever such an impasse exists, "defense counsel should make a record of the circumstances, his advice to the defendant, the reasons for the advice, the defendant's decisions and the conclusion reached." *Id.* Our caselaw further establishes that "conclusory allegations of impasse are not enough." *State v. Ward*, 2022-NCCOA-40, ¶ 19 (citation omitted). Nor is the existence of "a personality conflict" or a belief that defense counsel does not have the defendant's "best interest at heart." *Id.* ¶ 23.

The transcript below does not reflect an absolute impasse requiring the appointment of new counsel. The trial court engaged in a lengthy colloquy with Defendant, heard the basis for his dissatisfaction with counsel, and concluded on the record that it "d[id] not constitute an absolute impasse, but that the [D]efendant is acting in a manner to disrupt these proceedings and to inject error into this proceeding as well. The Court finds this to be without merit and the claims are without merit." These determinations are assuredly supported by the record; the outrageousness of Defendant's frequent and expletive-laden outbursts cannot be overstated. The trial court was best positioned to determine whether Defendant's discontented interruptions stemmed from a true irreconcilable conflict with counsel or an ulterior desire to undermine the trial.[2]

---

[2] Indeed, at the conclusion of the colloquy concerning Defendant's dissatisfaction with counsel, Defendant asked the trial court to hold him in contempt out of an effort to protest and disrupt what he claimed was an illegitimate trial. Defendant expressed similar

¶ 21    We will not disturb the trial court's well-supported findings and conclusions that Defendant's conduct stemmed from a desire to derail his prosecution rather than a genuine absolute impasse. *Cf. State v. Floyd*, 369 N.C. 329, 341, 794 S.E.2d 460, 468 (2016) ("In light of defendant's disruptive behavior, we cannot ascertain, without engaging in conjecture, whether defendant had a serious disagreement with his attorney regarding trial strategy or whether he simply sought to hinder the proceedings. As a result, it cannot be determined from the cold record whether an absolute impasse existed as described in *Ali*.").[3]

¶ 22    Defendant's own statements further disclose that many of his concerns stemmed from unfounded conjecture that do not amount to an impasse. For example, his belief that his attorney was working for the State and sabotaging his case because counsel was Black and Defendant an accused white supremacist is not sufficient to show an absolute impasse between counsel and client. *See Ward*, ¶¶ 19, 23. Similarly, Defendant's claims that counsel's cross-examinations were too brief and his objections too scant did not, in themselves, compel the trial court to find an

---

sentiments in other outbursts denigrating his counsel, at one point stating "you-all got the man in here that writes the damn newspaper. Well, I'm going to help him sell some of them."

[3] In *Floyd*, the trial court never ruled on whether the defendant's dispute with counsel amounted to an absolute impasse, and our Supreme Court dismissed the defendant's appeal without prejudice to filing a motion for appropriate relief because the record was not clearly dispositive of the issue. *Id.* This case is markedly different, as the trial court unequivocally ruled that Defendant's dissatisfaction with counsel was designed to derail the trial.

irreconcilable conflict requiring appointment of new counsel. *Hutchens*, 303 N.C. at 335, 279 S.E.2d at 797. We therefore hold that the trial court did not abuse its discretion in denying Defendant's motion for substitute counsel or commit other error under *Ali*.

## B. The Trial Court Properly Denied Defendant's Motion to Dismiss the Solicitation Charge.

### 1. *Standard of Review*

¶ 23 We review a trial court's denial of a motion to dismiss *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). In conducting this review, we consider the matter anew and "freely substitute [our] own judgment for that of the [trial court]." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quotation marks omitted).

### 2. *Discussion*

¶ 24 In deciding a motion to dismiss, "the question for the trial court is whether there is substantial evidence of each essential element of the offense charged, or of a lesser included offense, and of the defendants being the perpetrator of such offense." *State v. Malloy*, 309 N.C. 176, 178, 305 S.E.2d 718, 720 (1983). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002). Furthermore, all evidence must be considered in a light most favorable to the State, "giving the [S]tate the benefit of every reasonable inference and resolving any

contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

¶ 25 In this case, Defendant was charged with solicitation to commit first-degree murder, requiring the State to show that "the defendant counseled, enticed or induced another to commit each of the following: (1) an unlawful killing; (2) with malice; [and] (3) with the specific intent to kill formed after some measure of premeditation and deliberation." *State v. Crowe*, 188 N.C. App. 765, 769, 656 S.E.2d 688, 692 (2008). The crime of solicitation is complete upon the request or inducement of the defendant, even if the crime solicited is never committed. *State v. Smith*, 269 N.C. App. 100, 101, 837 S.E.2d. 166, 167 (2019) (citations omitted). Therefore, the trial court properly denied Defendant's motion if, when viewed in the light most favorable to the State, the evidence shows Defendant counseled, enticed, or induced Mr. Capps to unlawfully kill another human being with malice and specific intent formed after some measure of premeditation and deliberation.

¶ 26 We hold that the State met its burden and the trial court properly denied Defendant's motion. The State provided evidence through Mr. Capps's testimony that Defendant: (1) had multiple conversations with Mr. Capps in which he requested Mr. Capps kill Ms. Thomas; (2) drew and gave to Mr. Capps a detailed map of Ms. Thomas's house and the surrounding area once he became aware that Mr. Capps was due to be released; (3) provided Mr. Capps with two detailed suggestions as to how to

kill Ms. Thomas; and (4) offered to kill Mr. Capps's girlfriend upon his own release if Mr. Capps killed Ms. Thomas. This evidence, viewed in the light most favorable to the State, establishes each and every element of solicitation to commit first-degree murder; Defendant's arguments, which implore us to draw contrary inferences from the evidence, are simply precluded by the legal standard and view of the evidence applicable to motions to dismiss. The trial court did not err in denying Defendant's motion.

## C. The Trial Court Did Not Err in Declining to Intervene *Ex Mero Motu* In Closing Argument.

### 1. *Standard of Review*

¶ 27      "The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted). "Under this standard, [o]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken." *State v. Degraffenried*, 262 N.C. App. 308, 310, 821 S.E.2d 887, 888 (2018) (alteration in original) (citation omitted). Moreover, "a prosecutor's statements during closing

argument should not be viewed in isolation[,] but must be considered in the context in which the remarks were made and the overall factual circumstances to which they referred." *State v. Augustine*, 359 N.C. 709, 725-26, 616 S.E.2d 515, 528 (2005).

### 2. *Discussion*

¶ 28        Defendant argues that the prosecutor made four sets of grossly improper remarks that did not garner objections but nonetheless mandated the trial court's intervention *ex mero motu*. Specifically, Defendant points to the following as grossly improper: (1) the prosecutor's statements urging the jury to believe Mr. Capps over Defendant; (2) the characterization of Defendant as "unpredictable," "impulsive," and possessing other similarly negative traits; (3) the prosecutor's statement that Defendant's presumption of innocence had been removed in favor of proof beyond a reasonable doubt; and (4) the prosecutor's reference to the jury's duty to act for the people of Edgecombe County in reaching its verdict. We address each portion of the State's closing argument in turn.

### a. *Witness Credibility*

¶ 29        Defendant first argues that the prosecutor made grossly improper statements when she asked the jury to believe Mr. Capps's testimony over Defendant's conflicting testimony. While it is true that "an attorney may not . . . express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant," N.C. Gen. Stat. § 15A-1230(a) (2021), the State is "allowed to argue that

the State's witnesses are credible . . . [and that] the jury . . . should not believe a witness." *Augustine*, 359 N.C. at 725, 616 S.E.2d at 528 (citations and quotation marks omitted). Such arguments are proper even as to defendants when the evidence places their credibility at issue. *See State v. Williams*, 314 N.C. 337, 357, 333 S.E.2d 708, 721-22 (1985) (holding the prosecutor properly argued to the jury that the defendant's exculpatory statement was untruthful and should not be believed based on other evidence). The prosecutor veers into improper argument, however, when she directly asserts or repeatedly intimates and heavily implies that the witness at issue is a liar rather than being merely untruthful. *State v. Huey*, 370 N.C. 174, 182-83, 804 S.E.2d 464, 471 (2017).

¶ 30        A review of the prosecutor's arguments in context shows that her statements concerning the relative believability of Mr. Capps's and Defendant's conflicting testimonies were not grossly improper requiring intervention *ex mero motu*. Instead, in each instance identified by Defendant, the prosecutor pointed out reasons to believe the former witness over the latter, and she left the ultimate credibility determination up to the jury: "That's for you to decide looking at those same tests for credibility that you'll think about with every witness that testified before you." The prosecutor's statements were not improper, nor grossly improper as to be prejudicial. *Cf. Huey*, 370 at 182-83, 804 S.E.2d at 471 (holding that while the prosecutor's "repetitive and dominant insinuations that defendant was a liar" were improper, they

were not grossly improper requiring a new trial because "the evidence in this case does support a permissible inference that defendant's testimony lacked credibility").

### b. *Characterization of Defendant*

¶ 31    During her closing argument, the prosecution referred to Defendant as "unpredictable," "impulsive," "angry," "obsessed," "frustrated," and "dangerous." All of these statements are reasonable inferences from the record, and a prosecutor may argue all such inferences in closing. *See State v. Alston*, 341 N.C. 198, 239, 461 S.E.2d 687, 709-10 (1995) ("Counsel may, however, argue to the jury the law, the facts in evidence, and all reasonable inferences drawn therefrom.").[4]    Furthermore, a prosecutor's remarks that are critical of a defendant, even if derogatory, do not always amount to grossly improper argument. *See State v. Larrimore*, 340 N.C. 119, 163, 456 S.E.2d 789, 812 (1995) (holding that a prosecutor's characterization of a defendant as "the quintessential evil" and "one of the most dangerous men in the state" did not reach the level of gross impropriety that required the trial court to intervene *ex mero motu*).    Given that the prosecutor's statements are derived from the evidence, are not mere opinions or name-calling, and were not so incendiary as to

---

[4] The prosecutor's characterization of Defendant based on the evidence differs from improper statements of opinion that amount to nothing more than name-calling. *See, e.g, State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107-08 (2002) (holding as grossly improper a prosecutor's statements that the defendant was a "quitter, this loser, this worthless piece of . . . .  He's lower than the dirt on a snake's belly.").

warrant objection at the time they were made, we hold that the trial court did not err in declining to intervene *ex mero motu*.

### c. *Presumption of Innocence and Proof Beyond a Reasonable Doubt*

¶ 32 Defendant next argues that the prosecutor's statement that "Defendant's presumption of innocence has been removed and replaced with proof beyond a reasonable doubt," was grossly improper. We disagree. As our Supreme Court has observed, "a defendant's plea of not guilty clothes him with a presumption of innocence *which continues to the moment the State offers evidence sufficient to rebut the presumption* and to show beyond a reasonable doubt that the defendant in fact committed the crime charged, or some lesser degree thereof." *State v. Cephus*, 239 N.C. 521, 522, 80 S.E.2d 147, 148-49 (1954) (emphasis added). Read in context, the prosecutor simply argued to the jury that the State had offered sufficient evidence to rebut the presumption that Defendant was innocent and had shown Defendant's guilt beyond a reasonable doubt. Although this statement may have been poorly worded in isolation, considering the average juror's lack of legal training, we hold that it was not so grossly improper that the trial court was required to intervene *ex mero motu*.[5]

### d. *The Jury's Public Duty*

---

[5] And, as the State points out, it does not appear Defendant was prejudiced by this statement, as the jury did find Defendant innocent of the assault with a deadly weapon charge.

In his final effort to show gross impropriety, Defendant points to the following remarks from the prosecutor:

> But to protect society, other members of Edgecombe County[,] and in particular[,] this member of society, a verdict of guilty is necessary here . . . [y]ou represent the people of your county right now. You sit as citizens of Edgecombe County. And by your verdict, you not only protect [Ms.] Thomas[,] but every other vulnerable female in Edgecombe County that might find herself in the unfortunate position of being in a domestic relationship with [the] defendant.

Defendant contends that this was improper insofar as it urged the jury to find Defendant guilty based on a need to protect the victim and other women within the county rather than on the evidence presented.

Our courts "will not condone an argument asking jurors to put themselves in place of the victims." *State v. Warren*, 348 N.C. 80, 109, 499 S.E.2d 431, 447 (1998). *But see State v. Garner*, 340 N.C. 573, 596-97, 459 S.E.2d 718, 730-31 (1995) (holding there was no gross impropriety in a prosecutor's arguments telling the jurors to imagine themselves as the murderer's victims). We also will not allow arguments that seek to hold the jury personally accountable to the victim, the community, or society at large. *State v. Boyd*, 311 N.C. 408, 418, S.E.2d 189, 197 (1984). Prosecutors may, however, impress upon the jury its role as the voice of the community:

> These statements correctly inform[] the jury that for purposes of the defendant's trial, the jury ha[s] become the representatives of the community. "It is part of the

established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community." *Smith v. Texas*, 311 U.S. 128, 130, 61 S. Ct. 164, 165, 85 L. Ed. 84 (1940). Permitting the jury to act as the voice and conscience of the community is required because the very reason for the jury system is to temper the harshness of the law with the "commonsense judgment of the community." *Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S. Ct. 692, 698, 42 L. Ed. 2d 690 (1975). In a criminal case such as this, therefore, "the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." *Williams v. Florida*, 399 U.S. 78, 100, 90 S. Ct. 1893, 1906, 26 L. Ed. 2d 446 (1970).

*State v. Scott*, 314 N.C. 309, 311-12, 333 S.E.2d 296, 297-98 (1985). A prosecutor may also permissibly argue that a conviction may deter and prevent the defendant specifically from committing crimes in the future. *State v. Abraham*, 338 N.C. 315, 339, 451 S.E.2d 131, 143 (1994).

Read in context, the prosecutor's statements disclose they were made for the permissible purpose of calling the jury's attention to its role as representatives of the community and out of specific deterrence concerns. She did not impermissibly suggest that the jury would have to answer to the victim or the public if they failed to find Defendant guilty, *see Boyd*, 311 N.C. at 417-18, 319 S.E.2d at 196-97, nor did she ask the jury to determine Defendant's guilt or innocence as if the jurors themselves were victims. *Warren*, 348 N.C. at 109, 499 S.E.2d at 447. The

prosecutor's reference to Ms. Thomas and the specific deterrent effect of finding Defendant guilty was likewise not improper. *Abraham*, 338 N.C. at 339, 451 S.E.2d at 143; *see also State v. Campbell*, 340 N.C. 612, 631, 460 S.E.2d 144, 154 (1995) (holding a prosecutor's argument that "it is important to the [victim] Kathy Prices of the future that you do your duty, and you find [the defendant] guilty of everything he's charged with" was entirely proper and did not warrant intervention *ex mero motu*). The trial court did not err in declining to intervene *ex mero motu* here.

**D. Any Jury Instruction Error Was Harmless.**

### 1. *Standard of Review*

¶ 36        Defendant concedes he did not object to the jury instructions below and requests plain error review on appeal pursuant to Rule 10 of our Rules of Appellate Procedure. N.C. R. App. P. 10(a)(4) (2022). Plain error is one "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citations omitted). Furthermore, "under the plain error rule, [a] defendant must convince [us] not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

### 2. *Discussion*

¶ 37        In order to find a defendant guilty of solicitation of first-degree murder, the jury must find beyond a reasonable doubt the defendant asked another person to

commit every element of first-degree murder. *Crowe*, 188 N.C. App. at 769, 656 at

692. First-degree murder is distinguished from its lesser-included offense of second-

degree murder by the presence (or absence) of premeditation and deliberation:

> The elements of first-degree murder are: (1) the unlawful
> killing, (2) of another human being, (3) with malice, and (4)
> with premeditation and deliberation. The elements of
> second-degree murder, on the other hand, are: (1) the
> unlawful killing, (2) of another human being, (3) with
> malice, but (4) without premeditation and deliberation.

*Smith*, 269 N.C. App. at 102, 837 S.E.2d at 167-68 (citation omitted).

¶ 38        Ordinarily, "it is error, generally prejudicial, for the trial judge to permit a jury

to convict upon some abstract theory not supported by the bill of indictment." *State*

*v. Taylor*, 301 N.C. 164, 170, 270 S.E.2d 409, 413 (1980). However, "[w]hen a

defendant is indicted for a criminal offense, he may be convicted of the charged

offense or a lesser included offense when the greater offense charged in the bill of

indictment contains all of the essential elements of the lesser, all of which could be

proved by proof of the allegations in the indictment." *State v. Hudson*, 345 N.C. 729,

732-33, 483 S.E.2d 436, 438 (1997). This includes first- and second-degree murder.

*See State v. Yelverton*, 334 N.C. 532, 544, 434 S.E.2d 183, 190 (1993) ("Involuntary

manslaughter and second-degree murder are lesser-included offenses supported by

an indictment charging murder in the first degree."). Furthermore, our Supreme

Court "has generally held that the submission of a lesser included offense not

supported by the evidence is error, but error nevertheless favorable to the defendant and one for which he cannot complain on appeal." *State v. Ray*, 299 N.C. 151, 159, 261 S.E.2d 789, 794 (1980). Also, "where there is no reasonable possibility that a verdict more favorable to defendant would have occurred absent an erroneous instruction on a lesser offense not supported by the evidence, the error occasioned by such instruction is harmless." *Id.* at 164, 261 S.E.2d at 797; *see also State v. Cheeks*, 267 N.C. App. 579, 612, 833 S.E.2d 660, 681 (2019) ("[T]he defendant must demonstrate prejudice as a result of the variance." (citation omitted)).

¶ 39        Neither party has cited, and we cannot find, a prior appellate opinion directly addressing jury instructions on lesser-included offenses of solicitation crimes.[6] But *State v. Suggs*, 117 N.C. App. 654, 453 S.E.2d 211 (1995), is instructive. In that case, a defendant was charged with, among other crimes, solicitation to commit assault with a deadly weapon inflicting serious injury. *Id.* at 662, 453 S.E.2d at 216. The jury then convicted defendant of that crime. *Id.* On appeal, we held that the trial court erred in submitting the solicitation charge to the jury because the State

---

[6] The State cites our decision in *Smith*, in which a defendant, indicted for solicitation of first-degree murder, received the same jury instruction omitting premeditation that Defendant received here. 269 N.C. App. at 104, 837 S.E.2d at 169. That defendant did not assert a fatal variance argument, but instead contended the jury was required to make a special finding on malice in order to determine whether the defendant solicited a Class B1 or B2 second-degree murder, as that determination affected the classification of the solicitation conviction for sentencing. *Id.* at 104, 837 S.E.2d at 168-69. We ultimately held that the defendant had waived review of the issue because he neither objected to the jury instructions at trial nor alleged plain error on appeal. *Id.* at 105, 837 S.E.2d at 169.

presented no evidence that the defendant had solicited the use of a deadly weapon. *Id.* Although we vacated the defendant's conviction for solicitation to commit assault with a deadly weapon inflicting serious injury, we held that the jury had properly found her guilty of soliciting an assault:

> In finding the defendant guilty . . . of solicitation . . . to commit assault with a deadly weapon inflicting serious injury . . . , the jury necessarily found the facts establishing the crime[] of . . . solicitation of misdemeanor assault. It follows, therefore, that the verdicts returned by the jury must be considered verdicts of guilty of . . . solicitation of misdemeanor assault . . . . We therefore vacate the defendant's conviction[] of . . . solicitation to commit assault with a deadly weapon inflicting serious injury . . . and remand this case for entry of judgment and re-sentencing on the lesser-included offense[] of . . . solicitation of misdemeanor assault.

*Id.*

¶ 40        It rationally follows from *Suggs* that a defendant indicted for solicitation of a felony may be properly convicted of solicitation to commit a lesser-included offense not named in the indictment when the conviction for soliciting the unnamed lesser-included offense is supported by the evidence. *Id.*[7] With this proposition regarding

---

[7] It also appears, based on *Suggs*'s treatment of lesser-included offenses, that solicitation to commit second-degree murder is a lesser-included offense of solicitation to commit first-degree murder. *Cf. id.* (holding solicitation of misdemeanor assault is a lesser-included offense of solicitation of assault with a deadly weapon inflicting serious injury). "To be a lesser included offense, all of the essential elements of the lesser crime must also be essential elements included in the greater crime." *State v. James*, 184 N.C. App. 149, 154, 646 S.E.2d 376, 379 (2007) (citation and quotation marks omitted). Given that second-degree

solicitation of lesser-included offenses from *Suggs* in mind, Defendant's case is distinguishable from those fatal variance cases where the jury instruction allowed the jury to convict a defendant based on an entirely different theory of the crime than the one alleged in the indictment. *See, e.g., State v. Sergakis*, 223 N.C. App. 510, 514, 735 S.E.2d 224, 228 (2012) (holding it was plain error for the trial court to instruct the jury on conspiracy to commit felony larceny when the indictment only alleged conspiracy to commit felony breaking and entering).

¶ 41 Though the instant case presents a different situation from *Suggs*, consideration of the particular facts of this case leads us to hold that any error in the trial court's instruction was harmless. Based on the evidence presented, if Defendant solicited Mr. Capps to kill Ms. Thomas with malice upon Mr. Capps's release from prison, he necessarily requested Mr. Capps do so *in the future and according to Defendant's suggested plans*. Defendant's solicitation of murder therefore included and required premeditation and deliberation by Mr. Capps. *See State v. Corn*, 303 N.C. 293, 297, 278 S.E.2d 221, 223 (1981) ("Premeditation has been defined by this

---

murder is a lesser included offense of first-degree murder and, "[w]ith the exception of the elements of premeditation and deliberation, the elements of the two are the same," *State v. Goodson*, 101 N.C. App. 665, 668, 401 S.E.2d 118, 120 (1991), it stands to reason that the indictment alleging Defendant solicited all elements of first-degree murder, *Crowe*, 188 N.C. App. at 769, 656 at 692, necessarily alleged Defendant solicited all elements of second-degree murder. We ultimately do not resolve this question, however, and instead dispense with Defendant's argument on prejudice grounds.

Court as thought beforehand for some length of time, however short. . . . The intent to kill must arise from a fixed determination previously formed after weighing the matter." (citation and quotation marks omitted)); *State v. Jones*, 303 N.C. 500, 505, 279 S.E.2d 835, 838 (1981) ("[D]eliberation means an intention to kill, executed by defendant in a 'cool state of blood' in furtherance of a fixed design or to accomplish some unlawful purpose." (citations omitted)). Thus, to the extent the evidence convinced the jury beyond a reasonable doubt that Defendant solicited Mr. Capps to kill Ms. Thomas with malice once he was released from prison, that same evidence unavoidably established Defendant solicited a premeditated and deliberated homicide with the specific intent to kill.

¶ 42    In light of the evidence in this case, there is no indication "that absent the error the jury probably would have reached a different verdict." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (citation omitted). Nor does it appear that the trial court's instruction frustrated Defendant's ability to defend himself from the crime charged, as the record shows his defensive strategy was to persuade the jury that there was no credible evidence he asked Mr. Capps to kill Ms. Thomas at all, regardless of any premeditation, deliberation, or specific intent.[8] Because any error

---

[8] We note that, regardless of whether Defendant solicited a first-degree murder or second-degree murder on these facts, the punishment is the same here. *Compare* N.C. Gen. Stat. § 14-17 (2021) (classifying first-degree murder as a Class A felony and second-degree

in the jury instruction appears harmless, Defendant is not entitled to a new trial.[9]

### III.    <u>CONCLUSION</u>

For the foregoing reasons, we hold Defendant received a fair trial, free from prejudicial error.

NO PREJUDICIAL ERROR.

Judge GRIFFIN concurs.

Judge MURPHY concurs fully as to Parts I., II.A., II.B., II.D., and III., and concurs in the result only as to Part II.C.

---

murder—with some inapplicable exceptions—as Class B1), *with* N.C. Gen. Stat. § 14-2.6(a) (2021) ("[S]olicitation to commit a Class A or Class B1 felony is a Class C felony.").

[9] Defendant's final argument asks us to review his trial counsel's assent to the challenged jury instruction for ineffective assistance of counsel in the event we declined to conduct plain error review of the instruction. Because we have conducted a plain error review of that issue on the merits and found any error harmless, we do not reach this alternative argument.